# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOTTWEILER, Minors.

UNPUBLISHED
July 30, 2015

Nos. 325278; 325279
Cass Circuit Court
Family Division
LC No. 13-000086-NA

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 325278, father appeals as of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). In Docket No. 325279, mother appeals as of right the same order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

The record in this case indicates that the initial cause for the parents' loss of their children was due to neglect, deplorable home conditions, and a failure to protect their children from a convicted sexual predator. The mother went so far as to leave her children alone with the sexual predator. Furthermore, the three older children were already living primarily with their grandparents and the mother had on at least one occasion left her family for an extended period of time due to her inability to handle the stressfulness of the situation at home.

Mother and father raise a series of arguments that they were not provided with reasonable efforts[1] to reunify them with the minor children. Mother argues that she did not receive reasonable reunification efforts because her counseling services did not specifically address her traumatic childhood. Father argues that he did not receive reasonable efforts to reunify him with the minor children because he was not provided with pre-counseling activities designed to help him benefit from counseling. And, both mother and father argue that they did not receive reasonable reunification efforts because petitioner failed to adequately supervise Mary Ann

---

[1] Mother argues that "she has a due process right to the full benefit of services," and that she was erroneously denied "the full efforts" of petitioner to reunify her with the minor children. However, mother cites no authority for this proposition, and it is abandoned. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). We review mother's arguments for whether petitioner provided mother with reasonable reunification efforts.

-1-

Geiser, the service provider responsible for the parents' parenting training. However, mother never objected to not being referred to a counselor for the specific purpose of addressing her childhood, and father never objected to the lack of pre-counseling activities or to the fact that Geiser's service did not begin until April 2014. These issues are unpreserved. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). However, the parents' challenges to the early termination of Geiser's service are preserved. *Id.*

We generally review a preserved issue regarding reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). However, mother and father's unpreserved arguments are reviewed for plain error. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

In petitioning for the termination of parental rights, "petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights," *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008), except where aggravated circumstances exist, MCL 712A.19a(2) [they do not exist in this case]. The failure to make reasonable efforts to avoid the termination of parental rights may prevent the establishment of statutory grounds for termination. *In re Newman*, 189 Mich App 61, 67-69; 472 NW2d 38 (1991).

Mother first argues that petitioner erred because it knew that mother had a traumatic childhood, but did not refer mother to a counselor or therapist to specifically address her childhood. Kimberly James, the parents' caseworker, testified that mother reported to her that she had a strained relationship with her parents, that her mother was very verbally abusive, and that substance abuse was an issue in her home. James acknowledged that she did not make a referral to address mother's childhood trauma.

However, regarding her decisions concerning the services to which she referred mother and father, James explained that mother and father received psychological evaluations from Dr. Randall Haugen at the beginning of this case, and that she reviewed Haugen's evaluations when determining which services to offer mother and father. Within his psychological evaluation of mother, Haugen concluded that mother "made an extremely naïve attempt to present herself favorably" by denying and minimizing common problems and weaknesses most people acknowledge. Haugen also concluded that mother felt that she was unhappy, unlucky, and lacking in good emotional ties, and that mother was likely to be easily overwhelmed and frustrated. Haugen recommended that mother be referred to therapies focused on abuse and neglect, to conjoint counseling with father, and to parenting training.

Thus, while mother apparently reported her traumatic childhood to James, Dr. Hogue's evaluation focused on psychological issues that he felt warranted the most attention. As a result, Haugen recommended counseling, but not counseling specifically tailored to addressing mother's childhood, as mother argues was necessary on appeal.

The record supports that while mother reported a traumatic childhood to James at some point, mother did not report a traumatic childhood to Haugen. James ultimately relied on Haugen's expert counseling recommendations to make her decision. This is a situation where the psychological evaluation is given great weight in determining the course of treatment and so the action taken by James to follow the psychological evaluation is a reasonable one to make in

trying to work towards reunification. Furthermore, the lack of a counselor specifically focused on the mother's childhood trauma does not bar her from addressing that issue with the counselor to which she was assigned. Mother does not show plain error in the form of a lack of reasonable reunification efforts regarding the nature of the counseling services provided to her. *VanDalen*, 293 Mich App at 135 (review is for plain error). The fact that it was never addressed in the lower court leaves us lacking in testimony as to whether there was any addressing of the childhood trauma issue by the mother or the counselor.

Father argues that he did not receive reasonable efforts to reunify him with the minor children because he did not receive pre-counseling activities to help him benefit from the counseling. In father's psychological evaluation, Haugen concluded that father would have difficulties with establishing a good therapeutic relationship. To address this, Haugen recommended pre-counseling activities such as advice, homework, directives, and other active methods, rather than merely relying on counseling dependent on talk therapy. Father is correct in that he did not receive the pre-counseling activities Haugen recommended. However, the reason for not receiving these activities was because he began counseling on August 13, 2013, and Haugen's psychological evaluation was not released until September 3, 2013. In fact, father's counselor testified that father began counseling with her before father was referred to her by petitioner. It seems reasonable that petitioner put the father straight into counseling, considering the time he had already put in. Placing father into pre-counseling may very well have interrupted any progress already made in counseling. The father's counselor testified that when she deals with a concrete thinker like the father, she challenges the concrete thinker with reports and facts, with challenging questions, and with psycho-education on parenting. The counselor also said that she provided father with educational parenting materials and that father did a "pretty good" job with those materials. The materials allowed the counselor to talk to father about taking responsibility for what happened to the minor children "to some extent." The counselor began using the educational parenting materials with father by April 2014, and father engaged in those materials and actively participated in them. The counselor assigned to father testified at trial that at least an additional year of counseling would be needed for father. The type of counseling was reasonable given father's mentality, the main constraint on his progress was the limitation on time. The lack of pre-counseling received by father, while not the optimal method of treatment, does not indicate the petitioner failed to put forth a reasonable effort towards reunification. Thus, father does not show plain error in the form of a lack of reasonable reunification efforts regarding the absence of pre-counseling activities. *VanDalen*, 293 Mich App at 135.

Father also argues he did not receive reasonable reunification efforts because Geiser did not begin her parenting training until April 2014. Father is correct that Haugen recommended parenting training for father on September 3, 2013, and that Geiser did not begin services with father until approximately nine months after the initial removal of the children and seven months after Haugen's recommendation. The record does not provide an explanation for this delay. Regardless, father did not object to the timing of the start of Geiser's service, and father is therefore required to show plain and obvious error regarding the reasonableness of when Geiser began services with father. *Id*. Despite the missed additional counseling time, father still received over a year of counseling services. The extended length of counseling provided to father supports the lower courts view that more than a reasonable effort to reunify was made by

-3-

the petitioner. Father fails to demonstrate plain error regarding a lack of reasonable reunification efforts due to the timing of the start of Geiser's service. *Id*.

Mother and father also argue that they did not receive reasonable reunification efforts because Geiser prematurely ended their parenting training. On June 12, 2014, and July 12, 2014, Geiser reported to James that mother and father were participating in the parenting training service. On July 28, 2014, James reported to the trial court that both mother and father were continuing the parenting training with Geiser. However, on August 22, 2014, mother and father reported to petitioner that Geiser sent them a message that indicated that she was ending her parenting training service because another service provider was providing them the same service. Petitioner sent two emails to Geiser (one on August 22, 2014, and one on September 3, 2014) to clarify with Geiser that mother and father still needed her parenting training service. Geiser did not respond to these emails for several weeks. Subsequently, Geiser participated in a meeting at DHS and petitioner recommended that Geiser's services be resumed. However, Geiser's services were not resumed before the termination of mother's and father's parental rights.

During the termination hearing, Geiser testified that she stopped working with mother and father in July 2014 because she wrongly assumed that another service provider had taken over the responsibility of providing mother and father with parenting education. Geiser stated that this mistake was her fault.

Nevertheless, mother and father argue that petitioner failed to properly oversee Geiser's services. However, James obtained reports from Geiser in July 2014 so that she could provide a report to the trial court about mother's and father's progress with Geiser, and petitioner promptly responded to mother's and father's report on August 22, 2014, that Geiser had stopped working with them. We are not left with a definite and firm conviction that the trial court made a mistake in finding that petitioner made reasonable reunification efforts. *Fried*, 266 Mich App at 542-543 (review is for clear error).

Father also challenges the trial court's findings that there were statutory grounds for the termination of his parental rights and that termination of his rights was in the minor children's best interests. To terminate parental rights, a trial court must find the existence of a statutory ground for termination in MCL 712A.19b, that has been met by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). Only one statutory ground for termination must be established. *In re Trejo Minors*, 462 Mich 341, 360; 612 NW2d 407 (2000). After a trial court has established a statutory ground for termination by clear and convincing evidence, the trial court shall order termination of parental rights if it finds by a preponderance of the evidence "that termination of parental rights is in the child's best interests[.]" MCL 712A.19b(5); see *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). A trial court's factual findings, including a finding that a ground for termination was established and that termination was in a child's best interests, are reviewed for clear error. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357. A finding is clearly erroneous if the reviewing court "is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

Our review of the record indicates that while father was provided with counseling to help him get the insight he needed to care for the minor children, father did not make sufficient

progress to care for the minor children because of his resistance to counseling. Also, father was consistently late for his parenting time and missed multiple counseling sessions, which further reinforces his inability to fully invest into the care of his children. Additionally, father did not have a safety plan for the minor children because he did not acknowledge his problems during counseling. A trial court may rely on a parent's history of failing to provide care and custody in finding that there was no reasonable expectation that the parent would be able to provide proper care and custody within a reasonable time and in finding that a child would be harmed if returned to the parent's home. *In re Archer*, 277 Mich App 71, 75-76; 744 NW2d 1 (2007). Accordingly, the factual elements of MCL 712A.19b(3)(g) and (j) were met in this case regarding the minor children. The trial court's finding that there was clear and convincing evidence that a statutory basis existed for termination of father's parental rights to the minor children was not clearly erroneous. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.

Regarding the minor children's best interests, our review of the record indicates that the trial court properly considered the minor children's need for permanency and the advantages of the children's foster homes over father's home. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The trial court's finding that termination of father's parental rights was in the minor children's best interests was not clearly erroneous. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.[2]

Finally, mother argues that she was deprived of her due process right to an objective fact-finder because the trial court "continually took over from the Petitioner the presentation of proofs and the order of proofs." However, mother provides no legal authority for her argument that the trial court's involvement in the termination hearing made it a biased decision maker. This argument is abandoned. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). Nevertheless, we have reviewed mother's arguments to the extent possible, and find them to be without merit. MRE 611(a); *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012); *In re Jackson*, 199 Mich App 22, 29; 501 NW2d 182 (1993).

Affirmed.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

---

[2] Mother does not challenge the trial court's finding that there was clear and convincing evidence of grounds for termination of mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination of mother's rights was in the minor children's best interests. Nevertheless, our review of the record does not reveal clear error in those findings.