# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BARSCEWSKI/BARSCEWSKI-MAYS,
Minors.

UNPUBLISHED
September 8, 2015

No. 325409
Kent Circuit Court
Family Division
LC No. 12-052800-NA;
　　　　 12-052801-NA;
　　　　 12-052802-NA

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her three minor children, BB, IB, and DB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (c)(*ii*) (other conditions to cause the child to come within the court's jurisdiction continue to exist), (g) (failure to provide proper care and custody), and (j) (children will be harmed if returned to parent). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On September 7, 2012, petitioner petitioned the trial court to take jurisdiction over respondent's children, remove them from her home, and terminate her and the children's father's parental rights.[1] The basis of the petition was that the youngest child, DB, was admitted to the hospital with multiple rib fractures and respondent failed to provide an explanation for the fractures. DB was 13 days old at the time. The children were initially placed in foster care; the oldest child, BB, was later placed with a maternal uncle but was returned to foster care after his parents had unauthorized contact with him. Respondent entered into a treatment plan with petitioner that identified her barriers to reunification or needs as emotional stability, substance abuse, and parenting skills. Respondent was adjudicated in October 2012 and the trial court took jurisdiction over the children. At the dispositional hearing, it was revealed that the children's father had convictions for assault and domestic violence and that respondent had been arrested three times for domestic violence against the father. At least one domestic violence incident had

---

[1] The children's father voluntarily released his parental rights to the children on September 23, 2014 and is not a party to this appeal.

-1-

resulted in BB being accidentally hit by a cellular phone, although the record does not indicate who threw the phone. Respondent had participated in a psychological evaluation and was diagnosed with major depressive disorder. The caseworker also testified that BB had been diagnosed with cognitive impairments and impaired motor skills. After the initial dispositional hearing, the trial court ordered that reasonable efforts be made to reunify respondent and father with the minor children.

Respondent initially actively participated in many services provided by petitioner, including parenting classes, individual counseling, and anger management, and tested negative for substances apart from her prescription medicines. Respondent interacted well with the children during parenting times. Respondent continued to live with the children's father. Respondent and the children's father denied responsibility for DB's injuries. Respondent treatment plan was updated to include among her issues her domestic relationship with the children's father. In January 2013, the children's father was arrested for a domestic incident where he threw something at respondent; he was jailed for two weeks but the charges were eventually dropped.

At a permanency planning hearing in July 2013, respondent's caseworker reported that respondent was in the process of divorcing the children's father and that she was actively engaged in domestic violence treatment. BB was struggling with violent behaviors at school but was doing well in his foster placement. DB and IB were doing well in their placements.

In October 2013, BB was released to respondent's home. In January 2014, the caseworker reported that DB was doing well in his foster care and extended visits with respondent. The caseworker reported that IB had disclosed that she had witnessed many instances of domestic violence between respondent and father in the past, and was participating in counseling. IB had indicated that she was afraid of BB. BB had been prescribed medication that improved his behaviors and was attending counseling; his school behavior was improving. At that time, respondent told the caseworker that she was not living with the children's father and had minimal contact with him. However, the caseworker conducted an unannounced visit of respondent's home in November 2013, and found BB home alone with his father. Respondent told her that she could not find anyone else to watch BB while she attended a counseling session and that her neighbor, who normally watched him, had a family emergency. The neighbor confirmed that she had been at the hospital for most of the day but denied that respondent had asked her to babysit that day. At some point, IB disclosed to the caseworker that respondent had hit her, but that allegation had not been investigated at the time of the hearing.

By April 2014, BB was still doing well in respondent's home and his behaviors were improving. IB had made two allegations that respondent had hit her during parenting time at her home; however one of the allegations had not been substantiated and investigation into the other allegation was ongoing. IB told the caseworker that she did not feel safe during her parenting times in respondent's home because BB would fight with respondent. Additionally, respondent had resubmitted divorce papers after she and the children's father did not follow through with the original divorce filing. DB and IB remained placed in foster care with parenting time visits at respondent's home.

On May 1, 2014, IB and DB were returned to respondent's home. On May 23, 2014, the children were removed from the home after Amanda Leino, an investigator with petitioner, found bruising on DB's face, back, stomach, and side. All three children were placed in foster care. At a dispositional review hearing in June 2014, Leino reported that CPS had received a report that respondent and her children had been at a Family Dollar store, that an employee of the store had heard a "loud slapping noise," and that the employee had subsequently seen bruises forming on DB's face. Respondent told Leino that IB had caused DB's injuries. IB told the investigator that, on one occasion, she had hit DB with a board that had a tack in it, and that, on another occasion, she had hit him in the face with a hose when DB was trying to grab it away from her; she also reported that BB had kicked DB. A doctor examined DB and concluded that his injuries were not self-inflicted. Leino could not determine who had caused DB's injuries.

The caseworker testified that after the minor children were returned to foster care after being removed from respondent's home a second time, IB and DB were more aggressive and DB appeared to be a "little bit skittish" when he got in trouble and would flinch when his foster parents would come toward him. IB told her foster parents that respondent and BB got into "crazy" fights and that respondent would hit and bite when she got upset. The caseworker reported that respondent told her that IB kicked DB in the back, but that respondent told the investigator that BB kicked DB in the back. Emlie Goldner, program manager of Spectrum Community Services' children's department, testified that she provided services for BB from the end of October 2013 and was in respondent's home with him three days a week for approximately two hours. She had no concerns regarding respondent's level of supervision or discipline and did not see respondent ever strike the children.

At a later dispositional review hearing in June 2014, Leino stated her conclusion that there was a preponderance of the evidence to substantiate physical neglect, failure to protect, and improper supervision on respondent's part, but not physical abuse, regarding the Family Dollar incident. The caseworker recommended that BB alone be returned to respondent's home because he had made substantial improvement during the time he spent in respondent's home from September 2013 to May 2014. BB was released to respondent's home on July 3, 2014; IB and DB remained in foster care. However, that very same day petitioner again requested that the trial court remove BB after an employee of petitioner visited respondent's home and found the children's father, as well as marijuana, in the home. BB disclosed that his father was living in the home and that BB was experiencing upset stomachs and incontinence because of his fear of his father. The trial court ordered BB removed from the home. At the dispositional review hearing concerning BB's removal, the caseworker testified that respondent's treatment plan required that respondent not allow the children's father to be around the children because he had not completed any steps to address his issue with domestic violence. The caseworker reported that she found several pieces of the children's father's clothing in BB's room, and that when she spoke with BB regarding his stomach problems, BB initially told her that "he couldn't tell [the caseworker] or he wouldn't be able to see [respondent] anymore." Respondent and the children's father had denied that he was living there or that there was marijuana in the home, although the father admitted to smoking marijuana outside the home when he came over to get some clothes and a motorcycle.

The caseworker further testified that approximately 1-1/2 months before the hearing, IB said that "Daddy is going to live in the trailer with us and it's a secret." After BB was returned

to foster care, he showed the caseworker pictures from June 27, 2014, depicting respondent, BB, and his father together at a birthday party. The caseworker testified that she spoke with the children's father and he told her that he was going to leave the state of Michigan because he loved respondent and he was not going to be able to stay away from her.

Respondent was referred to a group therapy program designed to help abused or neglected women reunite with their children. Respondent continued individual therapy. BB's stomach issues and incontinence did not occur in his foster care placement.

In September 2014, the caseworker reported that respondent had been resistant to starting the group therapy program designed to help abused or neglected women reunite with their children because she felt that it was unfair that she had to participate in another program, and was now on the waiting list because she had missed her first opportunity to enter the program. The caseworker testified that IB said that respondent told her to be bad in her foster home, that respondent told her that she was a "bitch" and that respondent hit her and her siblings during unsupervised visits and when they were placed in respondent's home. The caseworker was concerned that respondent was coaching IB not to report incidents of domestic violence. IB's therapist testified that respondent had expressed animosity toward IB's foster parents to IB, and IB was confused as a result, as she felt that she had to choose between her biological parents and her foster parents. The caseworker also reported that BB had hit respondent during parenting times and called her names. BB also said that respondent told him not to look at his foster parents and that his foster parents did not care about him. The trial court ordered the goal for the minor children to be changed to adoption and ordered petitioner to initiate proceedings to terminate parental rights. The trial court suspended respondent's parenting time. The children's father voluntarily released his rights shortly thereafter.

Petitioner filed a supplemental petition requesting termination of respondent's parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the termination hearing, respondent's therapist, Bethany Bertapelle (also IB's therapist) reported that respondent had initially benefited from therapy from May 2013 to November 2013, but had ceased therapy and declined her invitation to resume it. Bertapelle reported that IB had nightmares about respondent trying to kill her and preferred to have parenting time in a supervised environment rather than respondent's home. Bertapelle felt that IB did not feel safe with respondent and that respondent instructed her children to keep secrets about what happened in her home. Bertapelle testified that she believed that the minor children would be at a risk of harm if they were returned to respondent. Bertapelle also testified that IB was bonded with her foster parents.

The caseworker testified regarding respondent's completed services. Despite the numerous services completed by respondent, the caseworker felt that DB's injuries in her care, as well as the continued presence of the children's father in their lives, indicated that respondent did not provide her children with proper supervision. She testified that respondent had told IB to keep secrets. The caseworker testified that she did not believe that respondent could make enough progress regarding parenting for the minor children to be returned to her care within a reasonable time because respondent did not understand how her relationship with his father affected BB, respondent did not understand how IB still needed counseling for emotional regulation and coping skills, and respondent was not able to internalize what she learned during

counseling to the extent necessary to be capable of meeting the minor children's needs as a group. The caseworker did not believe that respondent was able to handle the stress and responsibility of having all three of the minor children in her care at the same time. The caseworker believed that emotional stability was a barrier to reunification for respondent.

The caseworker further testified that while respondent and the children's father's divorce was finalized in July 2014, they were still in contact, even after the father's parental rights were terminated. The caseworker testified that domestic violence remained a barrier for respondent and that the barrier could not be addressed within a reasonable time.

The caseworker also testified that termination of respondent's parental rights was in the minor children's best interests based on respondent's history regarding parenting, emotional stability, and domestic relations, the minor children's need for permanency, the lack of a positive bond between the children and respondent, the advantages of the minor children's respective foster homes, and the foster families' willingness to adopt. During cross-examination, the caseworker stated that respondent's bond with IB was "pretty positive," but that it did not appear that respondent had a strong, positive bond with IB and DB, although she believed that respondent loved the minor children.

A home care nurse for respondent's grandmother testified to an incident that occurred approximately 8 to 10 months before the termination hearing. She stated that respondent and the children's father had argued over who would sell respondent's prescription drugs, that this argument took place in BB's presence, and that respondent had screamed loudly. The caseworker testified that she counted the number of respondent's prescription pills and it appeared that respondent was taking her medicine appropriately.

Goldner testified that she felt respondent was bonded to her children and that she had never witnessed any evidence of abuse in respondent's home.

After the close of proofs, the trial court issued its opinion from the bench. The court found that there was clear and convincing evidence of a ground for termination under MCL 712A.19b(3)(c)(i) because a condition that led to adjudication continued to exist in regard to respondent's inappropriate parenting based on continued problems with physical abuse and inappropriate physical discipline and there was no reasonable likelihood that the condition would be rectified within a reasonable time. The trial court found that there was clear and convincing evidence of a ground for termination under MCL 712A.19b(3)(c)(ii) because other conditions that caused the minor children to come within the court's jurisdiction continued to exist in regard to domestic violence and respondent's sale of her prescription drugs and there was no reasonable likelihood that the conditions would be rectified within a reasonable time. The trial court found that under MCL 712A.19b(3)(g), there was clear and convincing evidence that respondent failed to provide proper care and custody for the minor children and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages. The trial court also found that under MCL 712A.19b(3)(j), there was clear and convincing evidence of a reasonable likelihood of harm to the minor children if they were returned to respondent because DB was harmed after the minor children were previously returned to respondent. The trial court also found by a preponderance of the evidence that it was in the minor children's best interests to terminate

respondent's parental rights based on respondent's history with domestic violence and physical abuse, the minor children's need for permanency, respondent's inability to provide the children with an appropriate home for "many months," and the possibility for adoption. The trial court entered an order terminating respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred in finding statutory grounds for termination. We disagree. To terminate parental rights, a trial court must find the existence of a statutory ground for termination has been met by clear and convincing evidence. MCL 712A.19b; *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). A trial court's factual findings in terminating parental rights are reviewed for clear error. MCR 3.977(K); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Only one statutory ground for termination must be established. *Trejo Minors*, 462 Mich at 360.

Here, the trial court found statutory grounds for terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which provide:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding MCL 712A.19b(3)(c)(*i*), the first dispositional order was entered on November 19, 2012. The termination hearing occurred on December 3, 2014, well over 182 days after the first dispositional order. At the time of the adjudication, the trial court found statutory grounds for taking jurisdiction of the minor children under MCL 712A.2(b) because respondent failed to provide necessary care and respondent's home was an unfit environment, based on DB's injuries that occurred just 13 days after his birth. In its opinion, the trial court found a ground for termination under MCL 712A.19b(3)(c)(*i*) based on its finding that a condition that led to adjudication continued to exist in regard to respondent's inappropriate parenting based on continued problems with physical abuse and inappropriate physical discipline. The trial court based that finding on the fact that on May 22, 2014, DB was found with bruises on his face, ears, side, back, and stomach. Although respondent argues on appeal that IB caused DB's injuries rather that respondent, they occurred at a time when respondent was responsible for DB's care and support the trial court's conclusion that respondent had failed to rectify the conditions that lead to adjudication despite the passage of two years and her participation in extensive services. Further, IB reported that respondent hit her during parenting time, and multiple persons testified that BB and respondent fought physically. The trial court thus did not clearly err in finding that this statutory ground was proven by clear and convincing evidence. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.

Regarding MCL 712A.19b(3)(c)(*ii*), the trial court found that respondent was still permitting the children's father to contact them and still had issues with domestic violence concerning the children's father, even after respondent's plan was updated to require that she not allow such contact, and even after the children's father's rights were terminated. This finding was supported by clear and convincing evidence and was not clearly erroneous. Although respondent argues on appeal that the trial court erred in concluding that the children's father had not moved to Florida and that the parents would remain in contact, the trial court found, based on the evidence presented, that the children's father had contact with respondent throughout this case and that he still had contact with respondent at the time of the termination hearing, and that the evidence supported the inference they would remain in contact. This finding was also not clearly erroneous and supports the trial court's finding of a statutory ground for termination under MCL 712A.19b(3)(c)(*ii*).[2] MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.

---

[2] We do not find that the trial court's reference to the alleged sale of respondent's prescription drugs would have satisfied this statutory ground. The home health nurse's testimony was that respondent and the children's father had one argument, 8 to 10 months before the termination hearing, concerning who would sell her prescription drugs. On the other hand, numerous pill counts conducted by caseworkers, as well as drug screens, seemed to indicate that she was taking her prescription drugs as prescribed. In sum, evidence of respondent's sale of her prescription drugs was considerably less than "clear and convincing." See *In re Martin*, 450 Mich 204, 227; 533 NW2d 399 (1995), cert den sub nom *Martin v Martin*, 516 US 1113; 116 S Ct 912; 133 L Ed

Regarding MCL 712A.19b(3)(g), there was evidence that at the time of the termination hearing respondent had not rectified her issues with physical abuse and domestic violence. Additionally, respondent allowed unapproved contact between the children and their father, failed to understand how harmful this contact was for IB, coached IB and BB about what they should not say to caseworkers, and interfered with IB and DB's relationships with their foster parents. A trial court may rely on a respondent's history of failing to provide care and custody in finding that there was no reasonable expectation that the respondent would be able to provide proper care and custody within a reasonable time. *In re Archer*, 277 Mich App 71, 75-76; 744 NW2d 1 (2007). The trial court did not clearly err in finding a statutory ground for termination under MCL 712A.19b(3)(g). MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.

Finally, the trial court also found that under MCL 712A.19b(3)(j), there was clear and convincing evidence of a reasonable likelihood of harm to the minor children if they were returned to respondent because DB was harmed after the minor children were previously returned to respondent. As discussed above, there was significant evidence that respondent allowed father, a person who struggled with domestic violence and drugs and who had not participated in his treatment plan, to have unauthorized contact with BB. And there was evidence that respondent (at a minimum) failed to prevent significant injury to DB while he was in her care. A trial court may rely on a parent's history in determining that a child would be harmed if returned the parent's home. *Archer*, 277 Mich App at 75-76. Further, Bertapelle testified that she believed that the minor children would be at a risk of harm if they were returned to respondent. The trial court did not clearly err in finding a statutory ground for termination under MCL 712A.19b(3)(j). MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.

Although respondent argues that she completed her agency agreement and was able to show significant improvement in removing the barriers to reunification, mere participation and benefit from services is insufficient; rather, a parent must demonstrate sufficient compliance with and benefit from services to address the problem targeted by those services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). As discussed above, respondent did not address the problems targeted by her services in regard to parenting and domestic violence. Further, she failed to comply with the portions of her treatment plan regarding contact between the children and their father. We find no clear error in the trial court's findings regarding the statutory grounds for termination. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357.

### III. BEST-INTEREST DETERMINATION

Although not raised by respondent, we note that the trial court did not clearly err in finding that termination of respondent's parental rights was in the minor children's best interests. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357. The trial court found by a preponderance of the evidence that it was in the minor children's best interests to terminate respondent's parental rights based on respondent's history with domestic violence and physical abuse, the minor children's need for permanency, respondent's inability to provide the children with an

2d 843 (1996) (defining clear and convincing evidence). However, even removing this factor from consideration, sufficient evidence remained to support the trial court's finding concerning this statutory ground.

appropriate home for "many months," and the possibility for adoption. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We see no error in such a finding.

Affirmed.

/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey