*In re* ARCHER

Docket Nos. 275650 and 275651. Submitted September 5, 2007, at Detroit. Decided October 23, 2007, at 9:05 a.m. Leave to appeal denied, 480 Mich 994.

The Department of Human Services filed a petition in the Oakland Circuit Court to terminate the parental rights of Andrew and Jenny Nierescher to their two minor children and of Jenny Nierescher to her minor child from a previous relationship. After a pretrial hearing at which video recordings of the children telling a forensic interviewer that Andrew Nierescher had physically and sexually abused them were admitted, the court, Cheryl A. Matthews, J., granted the petition terminating the Niereschers' parental rights after finding that two of the statutory criteria for termination were met by clear and convincing evidence. Andrew and Jenny Nierescher appealed separately, and the Court of Appeals consolidated the cases.

The Court of Appeals *held*:

1. There was clear and convincing evidence to support terminating Jenny Nierescher's parental rights given that she was present while the children were being physically abused by Andrew Nierescher and that she left the children with known sex offenders. This evidence demonstrates that she failed to provide proper care and custody for the children and that there was no reasonable expectation that she would be able to do so within a reasonable time considering the children's ages. MCL 712A.19b(3)(g) and (j).

2. The trial court did not clearly err in determining that the evidence did not establish that termination of Jenny Nierescher's parental rights was clearly not in the children's best interests in light of evidence that she was aware that Andrew Nierescher had sexually abused two of the children and given the recommendation of a psychologist and a protective services worker that the children should have no contact with Jenny Nierescher. MCL 712A.19b(5).

3. The trial court did not abuse its discretion in admitting, in a hearing held before trial, video recordings of the children testifying that Andrew Nierescher had physically and sexually abused them. The trial court followed the procedure set forth in MCR 3.972(C) governing the admission of a child's statement and

properly determined that the statements at issue had adequate indicia of trustworthiness considering the totality of the circumstances, which in this case included corroborating photographic evidence. The parties' claim that admission of the video recordings tainted the entire proceeding is without merit because it is assumed that the trial court knew and followed the law and, further, because it is clear from the record that the trial court considered the statements at issue only during the evidentiary hearing and not during the adjudicative phase.

Affirmed.

1. PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — EVIDENCE — VIDEO-RECORDED STATEMENTS.

The videorecorded statement of a witness under 16 years of age is admissible in the nonadjudicative phases of a child protective proceeding to determine whether the statement has adequate indicia of trustworthiness to be admitted at trial (MCL 712A.17b[5]; MCR 3.972[C][2]).

2. PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — EVIDENCE — HEARSAY — CHILD ABUSE.

Circumstances indicating the reliability of a child's hearsay statement regarding abuse or neglect include spontaneity, consistent repetition, the child's mental state, use of terminology unexpected of a child of similar age, and lack of motive to fabricate (MCR 3.972[C][2]).

*David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Appellate Division Chief, and *Danielle Walton*, Assistant Prosecuting Attorney, for the Department of Human Services.

*Stacy M. Combs* for the minor children.

*Deel & Deel, PLLC* (by *Melinda N. Deel*), for Jenny Nierescher.

*John Maloney* for Andrew Nierescher.

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

BORRELLO, P.J. Respondent mother Jenny Nierescher appeals as of right the order terminating her parental

rights to Joie Archer, Andrew Nierescher II, and Chey-
enne Nierescher under MCL 712A.19b(3)(b)(*ii*), (g), and
(j). Respondent father Andrew Nierescher appeals as of
right the same order terminating his parental rights to
Andrew and Cheyenne under MCL 712A.19b(3)(b)(*i*), (g),
(j), and (k)(*ii*) and (*iii*). For the reasons set forth in this
opinion, we affirm.

### I. TERMINATION OF PARENTAL RIGHTS

#### A. STANDARD OF REVIEW

In order to terminate parental rights, the trial court
must find that at least one of the statutory grounds for
termination has been established by clear and convincing
evidence. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505
(2004). Once the lower court determines that a statutory
ground for termination has been established, it "shall
order termination of parental rights . . . unless the court
finds that termination of parental rights to the child is
clearly not in the child's best interests." MCL
712A.19b(5). See also *In re Trejo*, 462 Mich 341, 352-354;
612 NW2d 407 (2000). We "review for clear error both the
court's decision that a ground for termination has been
proven by clear and convincing evidence and . . . the
court's decision regarding the child's best interest." *Trejo*,
*supra* at 356-357; see also MCR 3.977(J).

#### B. STATUTORY GROUNDS FOR TERMINATION

Respondent mother argues that there was not clear
and convincing evidence to support terminating her
parental rights.[1] The trial court terminated respondent

---

[1] Respondent father does not argue on appeal that there was not clear
and convincing evidence to terminate his parental rights or that termi-
nation of his parental rights was clearly not in the children's best

mother's parental rights under MCL 712A.19b(3)(b)(*ii*), (g) and (j). MCL 712A.19b(3) provides, in relevant part:

The court may terminate a parent's parental rights to a child if the court finds . . . 1 or more of the following:

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

\* \* \*

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3).]

Contrary to respondent mother's argument on appeal, we conclude that there was clear and convincing

---

interests. His appeal is limited to the issues raised by the trial court's rulings on the evidentiary issues contained within MCR 3.972(C)(2) and MCL 712A.17b(5).

evidence to support terminating her parental rights under MCL 712A.19b(3)(b)(*ii*). Respondent mother admitted that she was present when respondent father struck Andrew's finger with a hammer to punish him for making an obscene hand gesture. She also conceded that she was present in the home when respondent father tied Andrew to a chair and then "hog-tied" him. Therefore, even though respondent mother had the opportunity and ability to do so, she failed to intervene and prevent physical injury and abuse to her child, Andrew. Moreover, there was a reasonable likelihood that the children would suffer injury or abuse in the foreseeable future if placed in respondent mother's home. Although respondent mother filed for a personal protection order and filed for divorce from respondent father, the evidence revealed that respondent mother associated with known sex offenders, allowed them to have contact with the children, and even allowed a known sex offender to reside in her home. Additionally, respondent's extensive history with the Department of Human Services indicated that respondent mother often put the children directly in harm's way by leaving them with known sex offenders. After reviewing the evidence, we are convinced that the trial court did not clearly err in finding that MCL 712A.19b(3)(b)(*ii*) was established by clear and convincing evidence.

There was also clear and convincing evidence to terminate respondent mother's parental rights under MCL 712A.19b(3)(g) and (j). Respondent mother admitted that she did nothing to prevent known sex offenders from interacting with her children and that she took no steps to ensure that sexual assaults would not occur. Her unwillingness to take the necessary precautions to ensure her children's safety from known sex offenders and her history of failing to protect her children from physical injury and abuse made it reasonably likely that

the children would be harmed if they were returned to her home. The evidence clearly illustrates that respondent mother failed to provide proper care and custody for the children and that there was no reasonable expectation that she would be able to provide proper care and custody within a reasonable time, considering the children's ages. Therefore, the trial court did not clearly err in finding that MCL 712A.19b(3)(g) and (j) were established by clear and convincing evidence.

### C. BEST INTERESTS

Respondent mother also argues that the trial court clearly erred in determining that the evidence did not establish that termination of her parental rights was clearly not in the children's best interests. At the best-interests hearing, new evidence was presented that respondent mother was aware that respondent father sexually abused Andrew and Cheyenne, yet did nothing to prevent the abuse. Joie indicated that she did not believe respondent mother could be trusted to take appropriate care of her. Both the psychologist and the protective services worker recommended that the children have no further contact with respondent mother, and the psychologist believed that it would be in the best interests of the children to terminate respondent mother's parental rights. The record reveals that respondent mother had a history of evading services or failing to follow through with services. On the basis of this history, the trial court found that there was no guarantee she would take advantage of or comply with services in the future, and, even if she did so, it would take several years before she was stable enough to appropriately parent the children. In making its decision, the trial court specifically focused on respondent mother's failure to protect the children from abuse. The

trial court could not find, on the basis of the whole record, that there was clear and convincing evidence that termination was not in the children's best interests. Accordingly, the trial court was required to terminate respondent mother's parental rights under MCL 712A.19b(5) and did not clearly err in doing so.

## II. ADMISSION OF EVIDENCE AT THE MCR 3.972(C)(2) HEARING

### A. STANDARD OF REVIEW

This Court reviews the trial court's decision to admit or exclude evidence for an abuse of discretion. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). To the extent that our determination of the evidentiary question requires an examination of MCR 3.972(C)(2) and MCL 712A.17b(5), our review is de novo. See *id.*

### B. PROCEDURAL HISTORY

After the trial court authorized the petition, petitioner moved to admit testimony under MCR 3.972(C)(2). The evidence consisted of various hearsay statements made by the children to a number of individuals regarding physical and sexual abuse. The evidence at issue on appeal includes statements that Cheyenne and Andrew made to Amy Allen during a forensic interview and that Allen recorded on DVDs. Allen is a forensic interviewer for the Child Abuse and Neglect Council.[2] According to petitioner's motion, during the interview Cheyenne told Allen that respondent father sexually abused her and described the sexual abuse, and Andrew told Allen that respondent father physically abused him and described the physical abuse.

---

[2] The Child Abuse and Neglect Council is commonly known as the "CARE House."

Petitioner sought to admit the statements made by the children through Allen's trial testimony. On September 28 and 29, 2006, before the adjudicative phase of the proceedings began, the trial court held an evidentiary hearing on petitioner's motion to admit testimony under MCR 3.972(C)(2). At the evidentiary hearing, Allen testified that she conducted forensic interviews with all three children and that the interviews were recorded on DVDs. Petitioner moved to play the DVDs of Andrew and Cheyenne's interviews on the record, and respondent father objected, arguing that under MCL 712A.17b(5), the DVDs were inadmissible at the trial phase of the proceedings. The trial court explained that trial had not yet begun and that it was conducting an evidentiary hearing under MCR 3.972(C)(2). Thereafter, respondent father withdrew his objection, and the DVDs containing Allen's interviews of Cheyenne and Andrew were admitted into evidence and played in court and on the record. At the conclusion of the testimony in the evidentiary hearing and after reviewing the DVDs of the children's interviews with Allen, the trial court ruled that statements made by Andrew and Cheyenne to Allen were sufficiently trustworthy and would therefore be admissible at trial through Allen's testimony.

### C. ANALYSIS

Respondent mother and respondent father both argue that the trial court erred in admitting the DVDs of Allen's interviews with the children at the MCR 3.972(C)(2) evidentiary hearing. Both respondents contend that admission of the DVDs violated MCL 712A.17b(5), and that the trial court's viewing of the DVDs tainted the entire proceedings. According to respondent mother, the trial court's admission of the

DVDs in violation of MCL 712A.17b(5) also resulted in a violation of her due process rights. Furthermore, respondent father argues that the trial court failed to sufficiently articulate what factors supplied the indicia of trustworthiness and that the record is insufficient to establish that the circumstances surrounding the giving of Cheyenne and Andrew's statements had adequate indicia of trustworthiness.

As a preliminary matter, we note that both respondents waived this issue below. As noted above, respondent father initially objected to the admission of the DVDs at the evidentiary hearing, but later withdrew the objection. Respondent mother's attorney did not object to admission of the DVDs; to the contrary, counsel for respondent mother stated on the record at the hearing that the trial court should review the DVDs to check for inconsistencies.[3] Despite the parties' waiver of this issue, we will consider it on appeal because respondent mother argues that the admission of the DVDs at the MCR 3.972(C)(2) hearing violated her due process rights, and this Court may review an unpreserved constitutional issue that presents a question of law for which the necessary facts have been presented. *People v Davis*, 250 Mich App 357, 364; 649 NW2d 94 (2002).

"Child protective proceedings have long been divided into two distinct phases: the adjudicative phase and the dispositional phase." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006); see also MCR 3.972; MCR 3.973. "The adjudicative phase occurs first and involves a determination whether the trial court may exercise jurisdiction over the child, i.e., whether the child comes

---

[3] A party may not claim error regarding an issue on appeal where the party's lawyer deemed the action proper at trial or otherwise acquiesced. *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002).

within the statutory requirements of MCL 712A.2(b)." *In re AMAC, supra* at 536. "During the adjudicative phase, a trial may be held to determine whether any of the statutory grounds alleged in the petition have been proven." *Id.* Although the rules of evidence for a civil proceeding apply during such a trial, *id.*, hearsay statements of children pertaining to acts of child abuse are admissible at the trial if the criteria for reliability set out in MCR 3.972(C)(2) (formerly MCR 5.972[C][2]) are satisfied. *In re Brimer*, 191 Mich App 401, 404; 478 NW2d 689 (1991).

Resolution of the parties' arguments on appeal requires us to consider MCR 3.972(C)(2) and MCL 712A.17b(5). MCL 712A.17b(5) governs the admissibility of a child's[4] videorecorded statements in child protection proceedings[5] and provides, in relevant part: "The videorecorded statement shall be admitted at all proceedings *except the adjudication stage* instead of the live testimony of the witness." (Emphasis added.) MCR 3.972(C) provides, in pertinent part:

> (2) *Child's statement.* Any statement made by a child under 10 years of age . . . regarding an act of child abuse, child neglect, sexual abuse, or sexual exploitation . . . performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.
>
> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the

---

[4] Under MCL 712A.17b(1)(d)(*i*) and (*ii*), MCL 712A.17b applies to the videorecorded statement of "[a] person under 16 years of age" or "[a] person 16 years of age or older with a developmental disability." Cheyenne and Andrew were under 16 years of age when Allen made the DVDs of her interviews of them.

[5] MCL 712A.17b(2)(b).

court has found, *in a hearing held before trial*, that the
circumstances surrounding the giving of the statement
provide adequate indicia of trustworthiness. This state-
ment may be received by the court in lieu of or in addition
to the child's testimony. [MCL 3.972(C)(2)(a) (emphasis
added).]

According to respondents, the trial court violated
MCL 712A.17b(5) by allowing the DVDs to be played
during the adjudicative phase of the proceedings. We
disagree and conclude that the trial court properly
admitted the DVDs during an evidentiary hearing that
occurred before the commencement of the adjudication
stage. Under MCR 3.972(C)(2)(a), the court must deter-
mine, "in a hearing held before trial," whether the
statement possesses adequate indicia of trustworthi-
ness. Pursuant to this rule, the trial court held an
evidentiary hearing on petitioner's motion to admit
certain testimony at trial. As the trial court observed on
the record: "We're not at trial, we're at a motion. We
haven't started the trial. We're doing [an MCR
3.972(C)(2)] hearing." We conclude that the evidentiary
hearing was "a hearing held before trial" as contem-
plated by MCR 3.972(C)(2)(a). By its own language,
MCL 712A.17b(5) permits the introduction of a child's
videorecorded statement "at all proceedings except the
adjudication stage"; it does not prohibit the introduc-
tion of such evidence at proceedings that take place
either before or after the adjudicative stage. The adju-
dication stage follows the preliminary hearing, *In re
Hatcher*, 443 Mich 426, 435; 505 NW2d 834 (1993), and,
in this case, the DVDs were played after the preliminary
hearing but before the adjudicative stage had begun.
Therefore, we conclude that the trial court's admission
of the DVDs at the MCR 3.972(C)(2) evidentiary hear-
ing before trial did not violate MCL 712A.17b(5).

MCR 3.972(C)(2)(a) requires a child's out-of-court statements concerning acts of child abuse to have adequate indicia of trustworthiness before they will be admitted at trial. In admitting the DVDs at the evidentiary hearing, the trial court specifically stated that it was "using this particular information and allowing this particular information in order to be able to ascertain the trustworthiness of statements as they will be given by the various witnesses before the Court."

Respondent father argues that the trial court failed to sufficiently articulate what factors supplied the indicia of trustworthiness and that the record is insufficient to establish that the circumstances surrounding the giving of Cheyenne and Andrew's statements had adequate indicia of trustworthiness. The reliability of a statement depends on the totality of the circumstances surrounding the making of the statement. *In re Brimer*, *supra* at 405. Circumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate. *Id.*

We conclude that the circumstances surrounding both Cheyenne and Andrew's hearsay statements provided adequate indicia of trustworthiness. Allen, the forensic interviewer who interviewed the children, had received training in conducting interviews of abused children and had conducted nearly 4,000 such interviews. She followed the state's forensic interviewing protocol in conducting the interviews of Cheyenne and Andrew. Regarding Cheyenne's statements describing respondent father's sexual abuse of her, the referee noted that the DVD depicted Cheyenne pointing to her "private area" while explaining that respondent father "st[u]ck his thing down there in her mouth and peed"

and that "the pee part felt nasty in her mouth." The referee also noted that Cheyenne described the incident in a way that suggested that she had information that a four-year-old child would only have if the abuse had actually happened to her. Cheyenne also indicated during the interview that she was telling the truth about what had happened to her, and there was no evidence that Cheyenne fabricated her story or had a motive to lie about the sexual abuse. Regarding Andrew's statements describing how respondent father tied him to a chair and then hog-tied him, the trial court observed that Andrew nodded in affirmation to show that he would tell the truth during the interview. Furthermore, incredibly, someone took photographs of this abuse; the photographs depict Andrew tied to a chair and hog-tied on the floor. This photographic evidence corroborated Andrew's description of respondent father's abuse of him.

The trial court properly complied with MCR 3.972(C)(2)(a) at the pretrial hearing by determining whether the circumstances surrounding the giving of the statement provided adequate indicia of trustworthiness. The court gave a comprehensive and detailed ruling addressing each of the children's statements petitioner sought to admit. The court analyzed the statements under the test set out in MCR 3.972(C)(2)(a) and admitted certain statements and excluded others. Therefore, we hold that no error occurred in the trial court's admission of the DVDs at the pretrial hearing to determine whether the circumstances surrounding the giving of the children's statements provided adequate indicia of trustworthiness to warrant their admission at trial through the testimony of Allen under MCR 3.972(C)(2)(a).

Because we hold that admission of the DVDs at the evidentiary hearing did not violate MCL 712A.17b(5),

we reject respondent mother's argument that her counsel was ineffective in failing to raise an objection based on MCL 712A.17b(5). Counsel is not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Finally, we reject respondents' claim that the trial court's viewing of the DVDs at the MCR 3.972(C)(2) evidentiary hearing tainted the entire proceedings. First, as we stated above, admission of the DVDs at the evidentiary hearing satisfies the criteria for admission set forth in MCL 712A.17b(5). Moreover, in a bench trial, we assume that the trial court knew the law and considered only the evidence properly before it, *People v Alexander*, 234 Mich App 665, 672; 599 NW2d 749 (1999), and in this case the trial court's statements on the record confirm that the trial court understood that the children's videorecorded statements were inadmissible during the adjudicative stage of the proceedings and that they were only admissible at the evidentiary hearing to determine the trustworthiness of the children's statements as required by MCR 3.972(C)(2). That the trial court clearly understood that the children's videorecorded statements were inadmissible at trial under MCL 712A.17b(5) is underscored by the trial court's response when defense counsel referred to Andrew's statements in the DVD during closing argument. The trial court instructed defense counsel that Andrew's videorecorded statements were inadmissible during the adjudicative stage under MCL 712A.17b(5). Thus, it is clear that the trial court did not consider the children's videorecorded statements in taking jurisdiction over the children, and respondents' argument that admission of the DVDs at the MCR 3.792(C)(2) hearing tainted the entire proceeding is without merit.

Affirmed.