*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MH, Minor.

UNPUBLISHED
February 10, 2022

No. 356661
Livingston Circuit Court
Family Division
LC No. 20-016159-NA

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In this interlocutory appeal in proceedings to terminate respondent-father's parental rights, petitioner appeals the trial court's order denying its motion in limine to admit into evidence in the adjudicatory trial, under MCR 3.973(C)(2), testimony regarding statements made by the three-year-old child, MH, to a forensic interviewer. Our Supreme Court remanded the case for consideration as on leave granted[1] after we initially denied it for lack of merit in the grounds presented.[2] We now reverse.

## I. BACKGROUND

Petitioner filed a petition for MH's removal from respondent's care based on allegations of sexual abuse. Petitioner alleged that MH told her mother that she did not want respondent to "suck on her gina anymore." Maria Lingg, who was qualified as an expert in child forensic interviews, conducted a forensic interview of MH in which MH made similar statements to Lingg about respondent and alleged sexual abuse. The trial court granted the removal petition and took custody of MH. Petitioner then filed a motion in limine seeking to admit these statements under MCR 3.972(C)(2) for purposes of the adjudicatory trial. After holding an evidentiary hearing, the trial court denied petitioner's motion, finding that the statements lacked adequate indicia of trustworthiness and precluding the statements from being presented to a jury through Lingg's testimony. Petitioner now appeals.

---

[1] *In re MH*, ___ Mich ___ (2021) (Docket No. 163260).

[2] *In re MH*, unpublished order of the Court of Appeals, entered June 16, 2021 (Docket No. 356661).

## II. ANALYSIS

### A. STANDARD OF REVIEW

"This Court reviews the trial court's decision to admit or exclude evidence for an abuse of discretion," but, "[t]o the extent that our determination of the evidentiary question requires an examination of MCR 3.972(C)(2) and MCL 712A.17b(5), our review is de novo." *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

### B. MCR 3.972(C)(2)

Petitioner argues that the trial court abused its discretion because MH's statements showed adequate indicia of trustworthiness. According to petitioner, the trial court largely ignored MH's highly concerning statements and Lingg's training. We agree.

We previously discussed the different phases of a termination of parental rights case:

> Child protective proceedings have long been divided into two distinct phases: the adjudicative phase and the dispositional phase. The adjudicative phase occurs first and involves a determination whether the trial court may exercise jurisdiction over the child, i.e., whether the child comes within the statutory requirements of MCL 712A.2(b). During the adjudicative phase, a trial may be held to determine whether any of the statutory grounds alleged in the petition have been proven. Although the rules of evidence for a civil proceeding apply during such a trial, hearsay statements of children pertaining to acts of child abuse are admissible at the trial if the criteria for reliability set out in MCR 3.972(C)(2) (formerly MCR 5.972[C][2]) are satisfied. [*Archer*, 277 Mich App at 79-80 (quotation marks and citations omitted; alteration in original).]

This appeal, as in *Archer*, "requires us to consider MCR 3.972(C)(2) and MCL 712A.17b(5)." *Id*. at 80. MCR 3.972(C)(2)(a) provides in relevant part:

> Any statement made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability as defined in MCL 330.1100a(26) regarding an act of child abuse, child neglect, sexual abuse, or sexual exploitation . . . performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.
>
> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony.

Concerning the use of video recorded statements[3] of minor witnesses, MCL 712A.17b(5) provides:

> A custodian of the videorecorded statement may take a witness's videorecorded statement. The videorecorded statement shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness. The videorecorded statement shall state the date and time that the statement was taken; shall identify the persons present in the room and state whether they were present for the entire video recording or only a portion of the video recording; and shall show a time clock that is running during the taking of the statement.

When determining the "reliability of a statement" and whether a child's "statements had adequate indicia of trustworthiness," the trial court must examine "the totality of the circumstances surrounding the making of the statement." *Archer*, 277 Mich App at 82. Factors to be considered when evaluating the reliability of a hearsay statement "may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id*. In *Archer*, this Court determined that the children's statements were reliable and therefore admissible:

> Allen, the forensic interviewer who interviewed the children, had received training in conducting interviews of abused children and had conducted nearly 4,000 such interviews. She followed the state's forensic interviewing protocol in conducting the interviews of [the children]. Regarding [daughter]'s statements describing respondent father's sexual abuse of her, the referee noted that the DVD depicted [daughter] pointing to her "private area" while explaining that respondent father "st[u]ck his thing down there in her mouth and peed" and that "the pee part felt nasty in her mouth." The referee also noted that [daughter] described the incident in a way that suggested that she had information that a four-year-old child would only have if the abuse had actually happened to her. [Daughter] also indicated during the interview that she was telling the truth about what had happened to her, and there was no evidence that [daughter] fabricated her story or had a motive to lie about the sexual abuse. Regarding [son]'s statements describing how respondent father tied him to a chair and then hog-tied him, the trial court observed that [son] nodded in affirmation to show that he would tell the truth during the interview. Furthermore, incredibly, someone took photographs of this abuse; the photographs depict [son] tied to a chair and hog-tied on the floor. This photographic evidence corroborated [son]'s description of respondent father's abuse of him. [*Id*. at 82-83 (alteration in original).]

---

[3] A "videorecorded statement" is defined to be "a witness's statement taken by a custodian of the videorecorded statement as provided in subsection (5). Videorecorded statement does not include a videorecorded deposition taken as provided in subsections (16) and (17)." MCL 712A.17b(1)(d).

In the present case, Lingg had received extensive training, was qualified as an expert, and had conducted more than 800 forensic interviews with children; moreover, Lingg followed the eight-phase Michigan Forensic Interviewing Protocol when she interviewed MH. Furthermore, MH, a three-year-old child, described things that she likely could only have known if the alleged sexual abuse had actually happened to her. MH brought up seeing respondent's "gina," that "he lets me suck the pee out of his" with her tongue, that she did not like to do this, and that respondent would not listen and made her do it. MH described respondent's "gina" as looking and feeling like "a stick." MH pointed to her groin when asking where respondent's "gina" was located. MH also stated that respondent had sucked her "gina" with his mouth. Lingg testified that MH used words in keeping with a child her age, and there was also no evidence that MH fabricated her story or had motive to lie. Lingg's expert testimony about the interview was unrebutted by respondent.

The trial court expressed concern that MH was distracted and fidgety with a short attention span, but Lingg testified that this was normal for a child MH's age. Lingg testified that she would often "attend to whatever [MH] was talking about for a few moments" and then "would try to ask another question to see if she was able to attend to that question, if she was able to give additional information indicating that her attention was still able to be given to the forensic interview or not." Additionally, although the trial court appeared to wonder whether MH could distinguish a truth from a lie, given some of the child's statements concerning the same, the interview shows that Lingg asked MH a number of questions to establish that MH could distinguish right from wrong and could even correct Lingg if she made an incorrect statement. Lingg testified that, based on her expert opinion, MH was able to understand right from wrong.

The trial court also appears to have taken issue with what it characterized as repetitive and pointed questions from Lingg. However, the interview shows that Lingg asked different questions in an open-ended way in an attempt to establish a narrative from MH and that these questions were not forceful or unnecessarily repetitive. Moreover, Lingg explained that she asked MH questions multiple times and in multiple ways in case MH was not familiar with certain words Lingg used; in Lingg's experience, this often happened with children in MH's age range. Lingg also explained that, given MH's age, it was often necessary to stray from the interview topics and instead focus on whatever MH was playing with in the room at the time. Lingg would then steer the conversation back to the interview topics. This necessitated asking questions multiple times and in different ways.

The trial court was concerned that MH stated that, during the alleged abuse, clothes were on rather than off. However, Lingg testified that the position of clothing was often a difficult concept for children in MH's age range to grasp because "clothes can be on, they can be off, they can be unzipped, pulled aside, pulled out . . . ." Therefore, although MH was not "able to give a lot of very clear clarification on the positioning of . . . clothing," this was common for children MH's age. Finally, the trial court expressed concern over MH's statement that she had a "joke" that was "secret." Lingg did not follow up on this statement. However, Lingg explained that she "chose the questions that . . . I thought were the best questions to . . . clarify what it was that she was stating in regards to the allegations." Lingg did not believe this merited further inquiry, especially in light of the troubling statements MH made about the abuse. Even the trial court acknowledged that the "secret joke" statement "might be the nature of [MH's] age." We do not believe that this single statement undermined the reliability of the interview.

Therefore, we conclude that the trial court abused its discretion because, when viewed in light of the totality of the circumstances—especially Lingg's training and MH's explicit statements—the circumstances surrounding MH's statements exhibited adequate indicia of trustworthiness.

Reversed and remanded for the trial court to grant petitioner's motion in limine. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica