*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BELANGER, Minors.

UNPUBLISHED
April 20, 2023

No. 361779
Benzie Circuit Court
Family Division
LC No. 20-003109-NA

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

In this child protective proceeding, petitioner, the lawyer-guardian ad litem (LGAL) of the minor children, SB and IB, appeals as of right the trial court's order dismissing his petition requesting that the court exercise jurisdiction over the minor children and terminate the parental rights of respondent-mother and respondent-father. We reverse and remand for further proceedings.

## I. BACKGROUND

Respondents have two children, SB and IB. On Thanksgiving day in 2019, Children's Protective Services (CPS) received a complaint that respondents had engaged in domestic violence in front of the children. CPS investigated the allegations and substantiated only respondent-father for improper supervision. During the course of the investigation, SB disclosed in a March 2020 forensic interview that he had witnessed respondent-father sexually abuse IB. After CPS substantiated this claim of abuse, the Department of Health and Human Services (DHHS) filed a petition in April 2020 requesting that the court take temporary jurisdiction over the children. This petition was assigned petition number 1803 (Pet. 1803).

At a May 2020 hearing, the court appointed the children's LGAL and authorized Pet. 1803. During this hearing, respondent-father entered a plea admitting only to the allegations that the children witnessed him assault respondent-mother in November 2019, and that he was arrested and subsequently jailed on domestic violence charges from November 2019 until February 9, 2020. The DHHS signaled its intent to abandon any claims that respondent-father sexually abused IB. The court accepted respondent-father's plea and found statutory grounds to assume jurisdiction over the children. The court permitted the children to remain in respondent-mother's custody, but

suspended respondent-father's parenting time. At a June 2020 dispositional hearing, the court ordered respondent-father to follow a treatment plan.

Sometime in June 2020, SB disclosed that he, too, was sexually abused—and also physically abused—by respondent-father. This disclosure precipitated a second forensic interview on June 25, 2020, at the Traverse Bay Children's Advocacy Center (CAC). Following this interview, the police declined to submit a warrant request.

On October 5, 2020, apparently because of the DHHS's refusal to do so, the LGAL filed a second petition, which was assigned petition number 1813 (Pet. 1813). Pet. 1813 alleged that in addition to domestic violence in front of the children, respondent-father sexually abused both children, and physically assaulted SB. In June 2021, the trial court dismissed Pet. 1813, reasoning that it was barred by collateral estoppel. In a prior appeal, this Court vacated the trial court's order dismissing Pet. 1813 and remanded the case for further proceedings. *In re SB & IB,* unpublished per curiam opinion of the Court of Appeals, issued February 10, 2022 (Docket No. 357609), p 9. This Court reasoned that the LGAL had statutory authority to file Pet. 1813, the allegations of sexual and physical abuse in Pet. 1813 were never fully litigated, and the allegations in Pet. 1813 were not substantially similar to the allegations raised and abandoned by the DHHS in Pet. 1803. *Id*. at 2-7.

On remand, the trial court found that respondent-father had substantially complied with the treatment plan under Pet. 1803 and, at the DHHS's urging, dismissed that petition. Then, in March 2022, the LGAL amended Pet. 1813 to add respondent-mother as a respondent and also to request termination of her parental rights. The amended petition alleged, among other things, that respondent-mother suspected that respondent-father was sexually abusing the children and failed to protect them from the abuse, and that even when she was informed of the abuse allegations, she permitted respondent-father to sleep in the children's beds during overnight parenting time. The amended petition also alleged that respondent-mother's mental instability prevented her from keeping the children safe.

After a preliminary hearing on Pet. 1813 was finally held on June 3, 2022, the trial court found no probable cause to authorize the filing of the petition, and, accordingly, dismissed the petition. The LGAL now appeals this order.

## II. DISCUSSION OF THE ISSUES

The LGAL argues that the trial court erred when it refused to admit and view SB's two videorecorded forensic interviews at the June 3, 2022 preliminary hearing. We agree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *In re Archer,* 277 Mich App 71, 77; 744 NW2d 1 (2007). A court abuses its discretion if it "chooses an outcome outside the range of reasonable and principled outcomes." *In re Portus,* 325 Mich App 374, 381; 926 NW2d 33 (2018). Insofar as resolution of an evidentiary question involves a preliminary question of law such as the interpretation of a court rule or statute, this Court's review is de novo. *In re Archer,* 277 Mich App at 77. A court necessarily abuses its discretion when it makes an error of law. *In re Portus,* 325 Mich App at 381.

At the June 3, 2022 preliminary hearing, following direct examination of the forensic interviewer, Andrea Ridgeway, the LGAL moved to admit the videorecordings of SB's forensic interviews. After respondents claimed that they had not yet seen the videos, the trial court held the LGAL's motion in abeyance. During closing arguments, the LGAL renewed his request to admit the videos. At that time, the trial court made it clear that it did not intend to admit the videorecordings or consider them to determine if there was probable cause to authorize the filing of Pet. 1813. The LGAL argues that the trial court erred by holding his motion in abeyance and then declining to admit and consider the videos. We agree.

MCL 712A.17b(5) governs the admissibility of a child's[1] videorecorded statements in a child protection proceedings. *In re Archer,* 277 Mich App at 80. This statute provides, in relevant part: "The videorecorded statement *shall* be admitted at all proceedings *except the adjudication stage* instead of the testimony of the witness." (Emphasis added.) By the plain language of the statute, MCL 712A.17b(5) unequivocally permits the introduction of a child's videorecorded statement "at all proceedings except the adjudication stage." The statute does not prohibit the introduction of the video evidence at proceedings that take place either before or after the adjudicative stage. *In re Archer,* 277 Mich App at 81. Indeed, under the statute, a trial court is required to admit a videorecording of a child's forensic interview during a nonadjudicatory stage. See *In re Martin,* 316 Mich App 73, 82, 83; 896 NW2d 452 (2016); *In re Brown/Kindle/Muhammad,* 305 Mich App 623, 632; 853 NW2d 459 (2014). The term "shall" in a statute specifies a mandatory directive. *Ellison v Dep't of State,* 320 Mich App 169, 180; 906 NW2d 221 (2017).

The LGAL sought to admit the videorecordings during the preliminary hearing. At a preliminary hearing, the court decides whether there is probable cause to authorize the filing of the petition. MCR 3.965(B)(12). The preliminary hearing necessarily takes place before the adjudication. See *In re Archer,* 277 Mich App at 81. Moreover, it is clear that the preliminary hearing is not part of the adjudication phase of a child protective proceeding. See *In re Ferranti,*504 Mich 1, 15; 934 NW2d 610 (2019). If a petition is authorized, the adjudication phase of the proceedings takes place, and the "question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *In re Mota,* 334 Mich App 300, 312; 964 NW2d 881 (2020), citing *In re Ferranti*, 504 Mich at 15. Here, the LGAL sought to admit the videorecordings at a proceeding other than the adjudication, and, therefore, the trial court was required to admit and consider the evidence. By failing to do so, the court violated the mandate of MCL 712A.17b(5). When a trial court excludes evidence based on an erroneous interpretation or application of the law, it necessarily abuses its discretion. See *In re Portus,* 325 Mich App at 381.

Respondents argue that the trial court did not err by refusing to admit the videorecordings as evidence at the preliminary hearing because a proper foundation was not established for the

---

[1] MCL 712A.17b(5) technically refers to a "witness," and MCL 712A.17b(1)(e)(*i*) defines "witness" as used in this section as "[a] person under 16 years of age." SB was under 16 years of age when he gave the forensic interviews at issue.

admission of the videotapes. While the trial court did not exclude the videorecordings on this basis, we nevertheless address this alternative basis for exclusion and conclude that it is without merit. MCL 712A.7b(5) provides that "[t]he videorecorded statement shall state the date and time that the statement was taken; shall identify the persons present in the room and state whether they were present for the entire video recording or only a portion of the videorecording; and shall show a time clock that is running during the taking of the statement." Further, MCL 712A.17b(6) requires that the questioning be in accordance with the forensic interview protocols implemented by the requirements of MCL 722.628. That statute, in turn, requires counties in Michigan to adopt and implement standard child interview protocols using as a model the protocols developed by the state. See MCL 722.628(6).[2] Ridgeway testified that when she conducted these interviews, she followed the Michigan Forensic Interview protocol. She also confirmed that the videorecordings were date and time stamped and, at the outset of the interview, she identified herself. According to Ridgeway, the videos depicted the entire room where the interviews occurred. Ridgeway testified that she recently viewed the videorecordings and they accurately reflected the events that transpired during the interviews. Accordingly, there is no merit to respondents' suggestion that the videorecordings were not admissible because the LGAL failed to establish a proper foundation for their admission.

The trial court's erroneous exclusion of the videorecordings deprived the LGAL of a full and fair hearing on the issue of whether there existed probable cause to authorize the filing of the petition. This is clear when one considers the LGAL's related argument that the trial court erred when it declined to independently view the videos and instead deferred to the police, the prosecuting attorney, and the DHHS regarding the credibility of SB's disclosures. Indeed, the record demonstrates that the court completely abdicated its responsibilities when it deferred to these other entities to decide whether SB's allegations were believable. At the conclusion of the hearing, after the LGAL requested that the court consider the videorecordings, the court stated:

> I spent 10 years in law enforcement, the Detective involved in this is experienced, the CPS worker involved in this is experienced, the County Prosecutor herself was present at that CAC interview. The Court's not going [to] interject its own observations of something that we had three professionals observing as it went on.

Because the trial court's legal error deprived the LGAL of a fair hearing, we vacate the trial court's order dismissing the LGAL's petition to terminate respondents' parental rights and remand for further proceedings on the petition.

The LGAL raises additional issues on appeal, but because we are vacating the trial court's order denying authorization of the petition and remanding for further proceedings, it is not necessary to address the additional assignments of error. We agree with the LGAL, however, that this matter should be assigned to a different judge on remand.

---

[2] MCL 722.628 has been amended since the June 3, 2022 preliminary hearing, but the amendments do not change the pertinent meaning of the statute for purposes of this case.

-4-

In determining whether to remand a case to a different judge, this Court considers

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019) (quotation marks and citation omitted).]

Based on the record, we conclude that the original trial judge will have difficulty putting aside previously expressed views and findings, and that reassignment is necessary to preserve the appearance of justice.

On more than one occasion, the trial court has demonstrated an inclination to avoid a meaningful analysis of the available evidence and to instead defer to the findings of law enforcement, the DHHS caseworkers, and the prosecuting attorney. At the hearing on the LGAL's motion to suspend parenting time, the court stated:

> The record that [the LGAL] is addressing was fully considered in petition 1803, 1803 was the petition wherein [respondent-father] was essentially removed from the home. The department—the department's counsel all heard—all—all the same evidence, you know, before the Court. If the Court were to be inclined to suspend parenting time, it's gonna have to be after fresh evidence at the preliminary hearing, we're not there yet.

Then, at the conclusion of the preliminary hearing, the court made the following remarks before the LGAL's closing argument:

> I spent 10 years in law enforcement, the Detective involved in this is experienced, the CPS worker involved in this is experienced, the County Prosecutor herself was present at that CAC interview. The Court's not going [to] interject its own observations of something that we had three professionals observing as it went on.

Finally, when issuing its decision, the court stated:

> The box physical abuse was checked. The box exposure to domestic violence was checked. The box of multiple separations from parent or caregiver has been checked. The—notably the box that was not checked was sexual abuse or exposure. Accordingly, that's the only thing [the LGAL] could try hanging his hat on for a termination of parental rights. Again, we had two—two investigators and a prosecutor watch the two CAC interviews, the Department chose not to pursue anything on allegations of sexual assault. The Prosecution Attorney chooses not to pursue any criminal charges for any kind of criminal sexual conduct. That coupled with [SB's therapist's] report here takes the sexual assault allegations off the table.

Not only has the court repeatedly and on a wholesale level deferred to other entities, it demonstrated a misunderstanding of this Court's decision in the prior appeal. While an error of law is not grounds for disqualification, see, e.g., *In re Contempt of Henry,* 282 Mich App 656, 680; 765 NW2d 44 (2009), much more than that is transpiring in this case. The court appears disinclined to even entertain the possibility that SB's accusations are credible, and it has refused to even review and consider the videorecordings of SB's forensic interviews in which he allegedly disclosed the sexual abuse by respondent-father. The court was entitled to determine what weight to give this evidence after considering it, but the court outright refused to even consider the evidence in the first instance. The court appears entrenched in its position, despite that the LGAL presented witness corroboration of SB's allegations of sexual abuse, which even respondent-mother initially deemed credible. Indeed, respondent-mother refused to allow the children to attend visits with respondent-father—despite a court order for such visitations—because she credited SB's allegations. This refusal resulted in respondent-mother being jailed for four days for contempt. These facts taken together convince us that the current judge would have substantial difficulty putting out of his mind previously expressed views, and we therefore direct that this case be reassigned to a different judge on remand.

In sum, we vacate the trial court's order dismissing the LGAL's petition and remand for further proceedings on the petition consistent with this opinion, before a different judge.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Anica Letica