*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BH, Minor.

UNPUBLISHED
October 11, 2024
2:38 PM

No. 370266
Dickinson Circuit Court
Family Division
LC No. 23-000504-NA

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor child, BH,[1] under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or abuse to child or sibling), MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent), and MCL 712A.19b(3)(k)(*iii*) (parent battered, tortured, or severely physically abused child or sibling of child). We affirm.

## I. BACKGROUND

Respondent, BH's father, lived with BH and BH's mother. In summer 2023, petitioner filed a petition seeking removal of respondent from the home as well as termination of his parental rights. The petition alleged that BH, who was four years old at the time, had tried to play a game with his mother. During the game, BH told his mother to "play dead," and she laid down and closed her eyes. BH touched her thighs and vaginal area, at which point she opened her eyes and saw that BH was also touching his penis. BH told his mother that respondent had previously played the game with him on three separate occasions and that respondent had called the game the "meow game." BH stated that, during the game, respondent touched his own penis while also touching BH's penis. BH underwent a forensic interview and disclosed that respondent had

---

[1] In light of the sexual abuse of BH, we do not identify him by name in the caption of this opinion.

touched BH's penis by placing his hand inside BH's pants. BH also disclosed that the touching had occurred both outside the house and in his bedroom near his toybox.

The police interviewed respondent, who told the police that BH had caught him masturbating approximately five or six times. Respondent stated that, although there were locks on the doors, he had not utilized them. BH's mother obtained a personal protection order against respondent, and he left the residence. Based on the allegations of sexual abuse, petitioner alleged that BH was at a substantial risk of harm and recommended that BH remain in his mother's care. At the preliminary hearing, respondent did not object to the filing of the petition or to his removal from the home. Moreover, in light of the personal protection order and ongoing criminal investigation, respondent did not object to having no contact with BH. The trial court noted the concessions but also found probable cause to support the allegations and to remove respondent from the home. BH remained in his mother's care.

Before the adjudication trial, petitioner filed a notice of intent to use BH's statements to his mother regarding the sexual abuse. Petitioner contended that the statements were admissible under MRE 803A, but later conceded that that rule did not apply.[2] Rather, the proper rule was MCR 3.972(2)(C), which permits a child's statements regarding sexual abuse to be admitted if certain conditions are met. This exception to the general rule against hearsay has been referred to as the "tender years exception." See *In re Curry*, 505 Mich 989, 990; 938 NW2d 735 (2020).

At the adjudication trial, BH's mother testified regarding the game that she and BH played. She testified that BH touched her leg and vaginal area, and that BH also touched his penis. She also testified that BH had told her that he played the game with respondent and that BH pulled his pants down and began to play with his penis, stating that that was what respondent did. Further, she testified that BH told her that respondent had touched himself while also touching BH and that they had played the game three times and in every room of the house, and even outside the house.

Dr. Alexis Whaley, a pediatrician, testified that she conducted a medical examination of BH. She found no evidence of physical or sexual abuse. However, without her asking any questions, BH talked to her about a game that he had played with his mother and respondent. He told her that the game involved lying down and counting while keeping your eyes closed. She testified that BH did not explain the game further and made no declarations of sexual abuse, but that he exhibited behavior not typical of his age, including "hypersexualized activity," which made her concerned that he had been exposed to complex sexual behavior or abuse.

Dillon Steinbrecher, an investigator with petitioner, testified that he investigated the case. Steinbrecher observed BH's forensic interview and testified that BH had disclosed that respondent touched BH's penis by placing his hand in BH's pants, that this had occurred three times, and that it had occurred both outside the house and in BH's bedroom by his toybox.

---

[2] Although MRE 803A is an exception to the hearsay rule with respect to a child's statement involving sexual abuse in certain circumstances, *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010), the rule requires that the child testify at the same proceeding, which did not occur in this case.

At that point in the proceedings, respondent informed the trial court that he was willing to stipulate to jurisdiction based on his admissions to the police officers. At the trial court's suggestion, respondent agreed to plead no contest to the petition's allegations. The trial court found that the evidence produced at the adjudication trial, along with respondent's plea, were sufficient for the court to assume jurisdiction over BH. The trial court noted its concern regarding possible hearsay, but remarked that BH's statements might be admissible under MCR 3.972. Respondent's counsel did not object or voice any concerns. Petitioner subsequently sought termination under the previously-listed statutory grounds.

The trial court held a termination hearing at which BH's therapist, Elizabeth Ann Hellman, testified that BH had disclosed various incidents involving respondent. The incidents included a "touching game" that respondent had played with BH, the fact that respondent had exposed himself to BH, and the fact that respondent had touched BH's "bottom" and "his peter." BH told Hellman that the incidents occurred in the kitchen, in his bedroom, in the car, and in the garage. BH also expressed that he did not feel safe with respondent, that he had felt particularly uncomfortable in the car with respondent as well as in the garage, and that BH had hid from respondent under his bed. Based on those disclosures, Hellman expressed concern regarding BH seeing respondent again and believed that BH might prefer to never see respondent again. Although Hellman recognized that there existed some form of a bond between BH and respondent, she described it as a "disorganized attachment" with few positive references to respondent. In addition, the CPS caseworker testified that respondent had never contacted her despite her numerous attempts to engage him. She also testified that respondent had made no effort to rectify the problem and believed that termination was in BH's best interests.

Thereafter, the trial court sua sponte determined that it needed to hold a tender-years hearing to address the possible hearsay testimony from BH's mother, Dr. Whaley, and Steinbrecher. The court acknowledged that the testimony might be admissible under MCR 3.972, but recognized that the rule required that a tender-years hearing be held *before* trial to determine whether BH's statements showed sufficient indicia of trustworthiness. Although the hearing would be held after trial, contrary to the court rule, the trial court stated that it would safeguard respondent's rights by allowing him an opportunity to challenge the statements elicited through the three witnesses. Respondent's counsel did not object to the hearing or respond to petitioner's arguments that the statements showed sufficient indicia of trustworthiness and that any error was harmless.

Steinbrecher was the only witness to testify at the hearing. He testified that he had been trained regarding the proper forensic-interview procedure and explained the procedure. He also testified that the procedure had been followed during BH's interview, that he had no concerns regarding the interview, and that BH had indicated that he understood the importance of telling the truth. Following Steinbrecher's testimony, respondent's counsel conceded that there was no indication that BH's statements were unreliable.

The trial court determined that the testimony of BH's mother, Dr. Whaley, and Steinbrecher pertaining to BH's statements was admissible under MCR 3.972(C)(2) because each showed adequate indicia of trustworthiness. The court relied on BH's mother's detailed description of the game and BH's statements, BH's unusual behavior that corroborated his statements, and the fact that the proper procedure had been followed during the forensic interview.

The trial court then determined that all three statutory grounds for termination had been proven by clear and convincing evidence. The court relied on the evidence admitted at the adjudication trial as well as on respondent's own statements during his police interviews, which the trial court found incredible. Next, the trial court determined that termination was in BH's best interests. The court relied primarily on Hellman's testimony as well as on respondent's lack of any progress in addressing the matter. Accordingly, the trial court terminated respondent's parental rights. This appeal followed.

## II. ANALYSIS

### A. TENDER-YEARS HEARING

Respondent argues that the trial court plainly erred by holding the tender-years hearing after the adjudication trial and termination hearing in violation of MCR 3.972(C)(2)(a) and that this plain error affected his substantial rights such that reversal is warranted. We disagree.

Because respondent's argument is unpreserved, our review is limited to plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). To avoid forfeiture under the plain-error rule, a party must meet three requirements: "1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). Typically, if an error affected the outcome of a proceeding, it affected substantial rights. *Id*. This Court reviews de novo the interpretation and application of the court rules. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination listed in MCL 712A.19b has been met. *In re Fried*, 266 Mich App 535, 540-541; 702 NW2d 192 (2005). Here, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), MCL 712A.19b(3)(j), and MCL 712A.19b(3)(k)(*iii*). Respondent does not directly challenge any of the statutory grounds for termination, but rather, he argues that no statutory grounds were established because the testimony of BH's mother, Dr. Whaley, and Steinbrecher pertaining to BH's statements was inadmissible. In other words, respondent concedes that, if such statements were admissible, the statutory grounds would be met.

Hearsay is inadmissible unless an exception applies. MRE 802. MCR 3.972(C)(2) is an exception and states, in pertinent part:

> Any statement made by a child under 10 years of age . . . regarding an act of child abuse, child neglect, confirmed sexual abuse, or confirmed sexual exploitation . . . performed with or on the child by another person *may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule*. [Emphasis added.]

The rule "permits a trial court to receive as substantive evidence of abuse what would otherwise be deemed inadmissible hearsay evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 630; 853 NW2d 459 (2014). "A statement describing such conduct may be admitted regardless of

whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, *in a hearing held before trial*, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness." MCR 3.972(C)(2)(a) (emphasis added). "The reliability of a statement depends on the totality of the circumstances surrounding the making of the statement." *In re Archer*, 277 Mich App 71, 82; 744 NW2d 1 (2007). "Circumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id.*

In *In re Snyder*, 223 Mich App 85, 92-93; 566 NW2d 18 (1997), this Court held that reversal was not warranted despite the fact that no preliminary hearing was held before the termination hearing to determine the trustworthiness of the children's hearsay statements, contrary to former MCR 5.972(C)(2), the precursor to MCR 3.972(C)(2). In that case, "the children made statements and engaged in conduct that led the caseworkers to believe that the children had been sexually abused by both parents." *Id*. at 87. The children, however, did not testify at the termination hearing. "Instead, caseworkers and therapists testified regarding what was said by the children and their foster mother." *Id*. The trial court did not hold a preliminary hearing before trial to determine whether such statements met the requirements of MCR 5.972(C)(2). *Id*. at 92. On appeal, the respondents argued that, because the sexual abuse was different from the grounds alleged in the initial petition, "such new allegations cannot be proved by hearsay evidence." *Id*. at 87.

This Court determined that the failure to hold a preliminary hearing was erroneous, but noted that the issue was unpreserved. *Id*. at 92. This Court stated that "[u]npreserved nonconstitutional 'plain error' of this type is subject to a harmless-error analysis on appeal," and explained that "[t]his particular error merely involves the admissibility of evidence, which ordinarily would not establish a basis for appellate relief in the absence of [a] timely trial objection unless a miscarriage of justice would result." *Id*. This Court further explained that no miscarriage of justice would result by denying appellate relief, stating as follows:

> Because there is every reason to conclude from this record that petitioner would have been able to satisfy these foundation admissibility requirements if given the opportunity, no miscarriage of justice will result if appellate relief is denied. Further, if any of the evidence on which the probate court, as trier of fact, relied could have been admitted, any error in failing to conduct the prerequisite foundational hearing was not decisive of the outcome and, therefore, harmless. In the absence of the requisite level of prejudice, this unpreserved error fails to provide a basis for appellate relief. [*Id*. at 92-93.]

In other words, despite the fact that no preliminary hearing was held, this Court declined to reverse because the record showed that petitioner could have established that the statements had sufficient indicia of trustworthiness for admissibility.

In this case, there is no dispute that the trial court failed to hold the tender-years hearing at the proper time. Therefore, the requirements of MCR 3.972(C)(2)(a) were not followed. However, we are unconvinced that this plain error affected respondent's substantial rights. The trial court conducted the hearing after the termination hearing and gave respondent an opportunity to

challenge the evidence and argue that it should be excluded. Moreover, the trial court did not make any determination regarding termination until after it resolved the evidentiary issue. Accordingly, respondent has failed to demonstrate prejudice as a result of the trial court's failure to hold the tender-years hearing before the adjudication trial.

Further, the trial court did not plainly err by determining that BH's statements, admitted through BH's mother, Dr. Whaley, and Steinbrecher, bore sufficient indicia of trustworthiness. In testifying about BH's statements made to her, BH's mother described in detail the "meow game" that BH spontaneously played with her and described BH's actions with his penis during the game. Likewise, Dr. Whaley provided similar details about the game that BH had played with his mother, and Dr. Whaley did not ask BH any questions that prompted his statements. In addition, BH told his mother that the touching occurred three times, and Steinbrecher testified that the proper forensic-interview procedure had been followed and that, during the interview, BH disclosed that the touching occurred three times. Further, BH told his mother that the sexual abuse occurred outside and in every room of the house, including in his bedroom by his toybox. Similarly, Steinbrecher testified that BH had stated during the forensic interview that the touching occurred outside the house and in his bedroom by his toybox.

Accordingly, the circumstances established the trustworthiness of BH's statements, which were spontaneous and repeated consistently. In addition, BH exhibited behavior that was atypical for his age and no evidence suggested that he had a motive to fabricate the allegations. Notably, MCR 3.972(C)(2) did not apply to the testimony of BH's mother, Dr. Whaley, and Steinbrecher concerning BH's behavior because observations regarding such behavior did not constitute hearsay, which is limited to statements. See MRE 801(c). Because the trial court did not plainly err by admitting the testimony, the trial court properly relied on the evidence to support its determination that the statutory grounds for termination had been proven. Further, because respondent concedes that the statutory grounds were met if the evidence was admissible, he is not entitled to relief on this issue.

## B. BEST INTERESTS

Next, respondent argues that the trial court plainly erred by failing to place sufficient findings on the record regarding BH's best interests. We disagree. Because this issue is unpreserved, our review is limited to plain error affecting substantial rights. *In re Sanborn*, 337 Mich App at 258.

Once the trial court finds by clear and convincing evidence that one or more statutory grounds provided in MCL 712A.19b(3) have been proven, "the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The court may also consider whether the child is safe with the parent, whether the child is thriving in foster care, and whether the foster

home can provide stability and permanency. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).

Here, the trial court thoroughly explained its reasoning for determining that termination was in BH's best interests. The trial court discussed the disorganized attachment between BH and respondent, concerns about BH's safety if returned to respondent, respondent's failure to take any steps to rectify the circumstances, the danger of allowing BH to have any contact with respondent because of respondent's failure to rectify the circumstances, the sexual abuse itself, and the mother's ability to provide care for BH. The evidence supported the court's reasoning. In particular, Hellman testified that BH had discussed feeling unsafe and uncomfortable around respondent and had hid from respondent under the bed. Hellman expressed concern if respondent was permitted contact with BH based on what BH had told her and described the bond between respondent and BH as a "disorganized attachment." In addition, the CPS caseworker testified that respondent had taken no steps to rectify any issues and failed altogether to contact her. In short, the trial court did not plainly err by determining that termination of respondent's parental rights was in BH's best interests and the court made sufficient findings to support its determination.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that his trial counsel rendered ineffective assistance of counsel by failing to request that the tender-years hearing be held before the adjudication trial, failing to object to the hearsay testimony presented at the adjudication trial and termination hearing, and failing to argue that the trial court's findings regarding BH's best interests were insufficient. As previously discussed, respondent's underlying arguments are unavailing. Any error regarding the timing of the tender-years hearing was harmless, BH's statements admitted through his mother, Dr. Whaley, and Steinbrecher bore sufficient indicia of trustworthiness, and the trial court made ample findings regarding why termination was in BH's best interests. Because respondent's underlying arguments are unavailing, his trial counsel did not render ineffective assistance of counsel by failing to raise meritless arguments or make futile objections. *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).

Finally, to the extent that respondent asserts that his counsel rendered ineffective assistance of counsel by failing to present favorable evidence regarding BH's best interests, he has abandoned his claim of error. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitchell v Mitchell*, 296 Mich App 513, 524; 823 NW2d 153 (2012), lv den 491 Mich 940 (2012) (quotation marks and citation omitted).

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani

-7-