*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COURTNEY, Minors.

UNPUBLISHED
July 20, 2023

No. 363109
Calhoun Circuit Court
Family Division
LC No. 2021-003313-NA

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(b)(*i*) (parent sexually abused child). Respondent-father argues two grounds on appeal. First, he argues that the trial court erred by admitting the daughter's statements under MCR 3.972(C)(2) (tender years) and that the daughter should have had to testify at trial. Second, he argues that the trial court erred by finding that it was in the children's best interests to terminate respondent-father's parental rights.[1] We affirm.

Respondent-father and the mother share twin children, and had joint physical and legal custody. While mother worked full-time, the children spent most of the week with respondent-father and his wife being homeschooled. When the children were to return to respondent-father's home after a visit with mother, the daughter disclosed that respondent-father sexually abused her. The daughter was medically examined, and Child Protective Services (CPS) put a safety plan in place for respondent-father to have no contact with either child. The daughter was forensically interviewed twice. During the second interview, the daughter disclosed that respondent-father put "his pee on her private part" more than once and it hurt. Under a search warrant for respondent-father's home, electronic devices were collected and evidence extracted of inappropriate pictures of the daughter. The police also discovered that respondent-father had a 1996 conviction of manufacturing child pornography.

An initial petition to terminate respondent-father's parental rights was filed based on the allegations of sexual abuse. Petitioner moved to introduce the daughter's statements made to the

---

[1] Respondent-father does not challenge the statutory grounds for termination.

-1-

examining nurse and forensic interviewer under MCR 3.972(C)(2), which the trial court granted. Respondent-father moved to amend his witness list to add the daughter based on inconsistent statements she made at the forensic interview and the preliminary examination of his criminal case. This motion was denied, and the trial court ruled that the preliminary examination testimony would not be admitted. A jury trial was held, and the jury found that statutory grounds existed to terminate respondent-father's parental rights. At a subsequent adjudication and dispositional hearing, the court determined that it was in the children's best interests to terminate respondent-father's parental rights. Respondent-father now appeals.

## I. ADMISSIBILITY OF CHILD'S STATEMENTS

This Court reviews the trial court's decision to admit or exclude evidence for an abuse of discretion. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *In re Jones*, 286 Mich App 126, 130; 777 NW2d 728 (2009). To the extent that this Court's determination of the evidentiary question requires an examination of MCR 3.972(C)(2), this Court's review is de novo. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) ("This Court also reviews de novo the interpretation of statutes, court rules, and legal doctrines.").

The rules of evidence for a civil proceeding generally apply during a trial to terminate parental rights. See MCR 3.972(C)(1); *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). However, statements by young children discussing acts of child abuse are admissible, even though hearsay, if certain criteria are satisfied. See MCR 3.972(C)(2); see also *In re Archer*, 277 Mich App 71, 80; 744 NW2d 1 (2007). Further, most privileges are abrogated when child protective proceedings result from a report of suspected child abuse. See MCL 722.631; *In re Brock*, 442 Mich 101, 116-118; 499 NW2d 752 (1993). MCR 3.972(C)(2) provides:

> Any statement made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability as defined in MCL 330.1100(a)(26) regarding an act of child abuse, child neglect, confirmed sexual abuse, or confirmed sexual exploitation, as defined in MCL 722.622(g), (k), (q), or (r), performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony.

> (b) If the child has testified, a statement denying such conduct may be used for impeachment purposes as permitted by the rules of evidence.

> (c) If the child has not testified, a statement denying such conduct may be admitted to impeach a statement admitted under subrule (2)(a) if the court has

found, in a hearing held before trial, that the circumstances surrounding the giving of the statement denying the conduct provide adequate indicia of trustworthiness.

Under MCR 3.972(C)(2)(a), the court must determine, " 'in a hearing held before trial,' " whether the statement possesses adequate indicia of trustworthiness. *In re Archer*, 277 Mich App at 81, quoting MCR 3.972(C)(2)(a). The reliability of a statement depends on the totality of the circumstances surrounding the making of the statement. *In re Brimer*, 191 Mich App 401, 405; 478 NW2d 689 (1991). "Circumstances indicating the reliability of a hearsay statement may include spontaneity and consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id*.

Under this rule, the trial court held a pretrial, tender-years hearing on petitioner's motion to admit various hearsay statements made by the daughter regarding sexual abuse. The evidence at issue on appeal includes statements the daughter made to the interviewer during two forensic interviews and statements made to the nurse during the daughter's medical examination describing respondent-father's sexual abuse. At the end of the hearing, the trial court ruled that the statements made by the daughter were sufficiently trustworthy and admissible at trial. This was not an abuse of discretion.

The circumstances surrounding the daughter's statements provided adequate indicia of trustworthiness. The interviewer was a trained forensic interviewer and followed the protocol in conducting both interviews of the child. The daughter described the incident using age-appropriate terminology, referring to the vagina as a private part and respondent-father's penis as a private part and noodle. There was no evidence that the daughter fabricated the story or had a motive to lie. On the contrary, mother was relying on respondent-father for the primary care of the children because of her work schedule, and the daughter's disclosure eliminated that option. Additionally, the photographic evidence extracted from respondent-father's old phone and his past conviction corroborated the daughter's description of the abuse. See *In re Archer*, 277 Mich App at 82-83. Accordingly, the trial court did not abuse its discretion by deeming the daughter's hearsay statements admissible at trial.

## II. AMENDMENT OF THE WITNESS LIST

The Sixth Amendment right to confrontation does not apply in child protective proceedings. See *In re Brock*, 442 Mich at 108. The requirements of due process do not mandate confrontation and cross-examination in every case. *Id*. at 109-110. Rather, whether due process requires an opportunity to confront a witness depends on a balancing of the risk of an erroneous deprivation of parental rights, the value of the additional safeguard, and the burdens occasioned by imposing the additional safeguard. *Id*. at 111-115. Child protective proceedings are not criminal proceedings. *Id*. at 107. "The purpose of child protective proceedings is the protection of the child." *Id*. The question at issue is what procedural due-process requirements are implicated in the adjudicative phase of a child protective proceeding.

"Due process applies to any adjudication of important rights." *In re HRC*, 286 Mich App 444, 454; 781 NW2d 105 (2009) (quotation marks and citations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v*

*Eldridge*, 424 US 319, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976) (quotation marks and citation omitted). Due process requires fundamental fairness, which is determined in a particular situation first by considering relevant precedents and then by assessing the interests at stake. *Lassiter v Dep't of Social Servs of Durham Co, NC*, 452 US 18, 24-25; 101 S Ct 2153, 2158; 68 L Ed 2d 640 (1981). Generally, three factors are considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews*, 424 US at 335.]

An adjudicative proceeding determines whether the court may acquire jurisdiction over a child. *In re Brock*, 442 Mich at 111. Therefore, the liberty interest at stake is the parents' interest in the management of his or her children. *Id*. "The procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of this interest." *Id*.

In this case, at an early pretrial hearing, the trial court suggested that the daughter's testimony from the criminal preliminary examination could be played for the jury if it was different from the testimony already admissible in this case. The trial court concluded that taking a deposition or forcing the daughter to testify would be less reliable than her testimony under oath in the criminal proceeding. Evidence was presented regarding the daughter's response after providing testimony in the criminal proceeding in which she expressed how fearful she was of respondent-father and how she did not like the attorney. Additional evidence established that the attorney who cross-examined the daughter implied that the child was "dumb," and how she was shaking and crying. Further evidence was presented that the daughter "shut down" and was not doing well on the stand.

The trial court explained that there was significant evidence that the daughter would suffer emotional distress on the basis of the daughter's reactions after the criminal proceeding, and that the government's interest in protecting the child from trauma was significant. The trial court further explained that the goal was to secure the most accurate testimony, to preserve and protect the welfare of the child, and to protect the children's interest to be free from an abusive environment.

The trial court properly denied respondent-father's request to amend his witness list to add the daughter as a testifying witness. First, respondent-father missed the deadline to amend the witness list and was well aware that the trial court was not going to extend the deadlines. Furthermore, the trial court appropriately determined that the trial court was not required to force the child to testify because it was a termination hearing instead of a criminal proceeding, and it reviewed the factors regarding due process. The trial court determined that the protection of the daughter far outweighed respondent-father's desire for her to testify again regarding sexual abuse that would be presented through various other admissible testimony. There was evidence that the daughter suffered significant trauma after testifying in the criminal matter and she was finally progressing toward emotional improvement. The trial court properly decided that the daughter

should not be subjected to any ongoing trauma by being forced to discuss the sexual abuse that she endured over and over again.

Addressing the testimony from the preliminary examination, the trial court listened to the entire testimony at the tender-years pretrial. Respondent-father then reiterated his argument that the daughter should have to testify at trial despite the trial court's denial of his request. The trial court clarified and confirmed that respondent-father was seeking to have the daughter testify and not requesting to have the preliminary examination video be played for the jury. Respondent-father expressed that he wished to have the daughter testify or to have the video played for the jury if the child was not allowed to testify. Respondent-father sought to admit the statements made during the preliminary examination on the basis that the statements were exculpatory. The trial court determined that the statements recited by respondent-father at the pretrial hearing were out of context and a mischaracterization of the actual testimony provided. Further, the trial court determined that the daughter was going through a very confusing and emotional time during the preliminary examination testimony and that, regardless, there was no exculpatory evidence. The trial court explained that the statements made to the forensic interviewer and the nurse were already determined to be reliable and trustworthy, and the statements made at the first forensic interview versus the second forensic interview would provide respondent-father with ample opportunity to raise his argument regarding the child's allegedly inconsistent statements. The trial court further reasoned that respondent-father could not amend his witness list regardless because his counsel missed the deadline and the trial court made it very clear that deadlines would not be extended.

Thus, the trial court did not abuse its discretion by denying respondent-father's request to play the daughter's testimony from the preliminary examination at the criminal proceeding for the jury. The trial court properly determined that the recording of the daughter's testimony at the preliminary examination was not admissible because there were no adequate indicia of trustworthiness. Reliability was called into question given the daughter's state of mind during her testimony, her age, the lack of safeguards provided during her testimony, and the nature of the cross-examination. The daughter was six years old and repeatedly referred to the sexual abuse by respondent-father in a setting where she was comfortable and one-on-one with both the forensic interviewer and the nurse treating her. This is hardly comparable to a courtroom setting in which the daughter was face-to-face with her abuser and cross-examined by an attorney. The trial court already had admissible testimonial evidence of multiple statements made by the daughter to multiple people regarding the abuse.

III. BEST INTERESTS

The trial court did not clearly err by finding, by a preponderance of the evidence, that termination of respondent-father's parental rights was in the children's best interests.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's finding is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

If the trial court finds that the petitioner established one or more grounds for termination of parental rights by clear and convincing evidence, the court must order the termination of the parent's parental rights if it also finds that termination is in the child's best interests. MCL 712A.19b(5); *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010). The petitioner bears the burden of proving that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. In making the best-interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). It is also proper to consider evidence that the children are not safe with the parent, that the children are thriving in foster care, and that the foster-care home can provide stability and permanency. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). The trial court may also consider a parent's history of domestic violence, the parent's compliance with a case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

In this case, the children have had no contact with respondent-father since the daughter initially disclosed the sexual abuse to her mother. The children had been attending weekly counseling arranged by mother with the school, and the daughter has shown an improvement in controlling her emotions compared to when she first disclosed her abuse. Neither child has asked about their father or expressed any desire to visit respondent-father since the no-contact order was implemented. Both children seem to be thriving and love their friends and family with whom they have developed relationships since being placed with mother. These circumstances establish that there was minimal to no bond between the children and respondent-father. In fact, the daughter expressed that she was fearful of respondent-father and he did not protect her.

It was shown by clear and convincing evidence that respondent-father sexually abused one of his children and that the child was traumatized by the abuse. There was also evidence that respondent-father had been participating in the same types of acts dating back to the year 1996, and that it has not been remedied. Respondent-father was offered psychological services but refused the services provided, indicating no desire for rehabilitation or accountability for his actions. These circumstances make both children extremely susceptible to future abuse if they were to remain in contact with respondent-father. Furthermore, despite the obvious traumatic impact of the sexual abuse on the victimized child, if respondent-father's parental rights for his son were not terminated, the son would continue a relationship with a father who believes that his sexual behavior is acceptable. The son would also be at risk of abuse by respondent-father or grow up to learn that respondent-father's behavior was normal. Therefore, the trial court's finding that the termination of father's parental rights was in both children's best interests was not clearly erroneous.

-6-

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood