*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JV, BS, and SZ, Minors.

UNPUBLISHED
March 17, 2025
2:47 PM

No. 370510
Sanilac Circuit Court
Family Division
LC No. 22-036601-NA

*In re* JV, Minor.

No. 370511
Sanilac Circuit Court
Family Division
LC No. 22-036601-NA

*In re* SZ, Minor.

No. 370513
Sanilac Circuit Court
Family Division
LC No. 22-036601-NA

*In re* BS, Minor.

No. 370694
Sanilac Circuit Court
Family Division
LC No. 22-036601-NA

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

-1-

In Docket No. 370510, respondent KS appeals as of right an order terminating her parental rights to JV, BS, and SZ pursuant to MCL 712A.19b(3)(b)(*i*) (physical injury or physical or sexual abuse to the child or a sibling), (g) (failure to provide proper care or custody), (j) (likelihood of harm to the child), and (k)(*iii*) (severe physical abuse). In Docket No. 370511, respondent JVS appeals as of right an order terminating his parental rights to JV pursuant to MCL 712A.19b(3)(a)(*ii*) (desertion), (h) (imprisonment such that the child will be deprived of a normal home for over two years), (j), and (m) (conviction of certain enumerated crimes). In Docket No. 370513, respondent ZZ appeals as of right an order terminating his parental rights to SZ pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). In Docket No. 370694, respondent NW appeals as of right an order terminating his parental rights to BS pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication) and (j). We affirm in all four appeals.

## I. BACKGROUND

KS and ZZ had custody of the three boys at the time of removal and the filing of the initial petition. JVS was incarcerated, serving a sentence of life imprisonment without the possibility of parole. KS, ZZ, and JVS demanded a jury trial for purposes of adjudication, and the jury found that the court had jurisdiction over the children. The court subsequently terminated KS's, ZZ's, and JVS's parental rights at the initial dispositional hearing, finding that KS and ZZ had inflicted multiple types of physical and sexual abuse upon the children and that JVS had committed extremely serious crimes and had not supported or cared for JV. NW did not demand a jury trial and instead made a plea of admission to the petition for jurisdiction. He was offered services by petitioner, the Department of Health and Human Services (DHHS). After several review hearings, the court terminated his parental rights to BS, finding that NW had failed to comply with the services.

On appeal, KS and ZZ contend that the trial court erred by allowing into evidence statements the children made to other people. They also contend that the trial court erred by finding that there were statutory grounds for termination and that termination was in the children's best interests. JVS argues that the trial court erred by finding that there were statutory grounds for termination. NW argues that the trial court erred by finding that there were statutory grounds for termination and that termination was in BS's best interests.

## II. STANDARDS OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." In *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 629; 853 NW2d 459 (2014).

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3), and this Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established, *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, even if some evidence supports it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id.*

This Court reviews for clear error a lower court's decision that termination is in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

## III. DOCKET NOS. 370510 AND 370513: KS AND ZZ

### A. TENDER-YEARS HEARING

KS and ZZ argue that the trial court erred by admitting testimony regarding statements that the children made to other people. We disagree.

In May 2023, petitioner filed a motion to admit evidence of statements made by the children to others, in accordance with MCR 3.972(C)(2). This court rule provided, at the pertinent time and in pertinent part:

> *Child's Statement*. Any statement made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability as defined in MCL 330.1100a(26) regarding an act of child abuse, child neglect, confirmed sexual abuse, or confirmed sexual exploitation, as defined in MCL 722.622(g), (k), (q), or (r), performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.
>
> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony. [Former MCR 3.972(C)(2).[1]]

"Developmental disability" is defined, in pertinent part, as follows:

> (a) If applied to an individual older than 5 years of age, a severe, chronic condition that meets all of the following requirements:
>
> (*i*) Is attributable to a mental or physical impairment or a combination of mental and physical impairments.
>
> (*ii*) Is manifested before the individual is 22 years old.
>
> (*iii*) Is likely to continue indefinitely.

---

[1] Nonsubstantive changes were made to the rule after the proceedings in this case.

(*iv*) Results in substantial functional limitations in 3 or more of the following areas of major life activity:

(A) Self-care.

(B) Receptive and expressive language.

(C) Learning.

(D) Mobility.

(E) Self-direction.

(F) Capacity for independent living.

(G) Economic self-sufficiency.

(*v*) Reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services that are of lifelong or extended duration and are individually planned and coordinated.  [Former MCL 330.1100a(26).[2]]

Petitioner stated in its motion that BS was nine years old, SZ was seven years old, and JV was 12 years old.  Petitioner noted that JV had been diagnosed as having a developmental disability and referred to an Easter Seals assessment.  Petitioner set forth the various statements the children had made to others during the course of the case.  Petitioner stated that "[a]ll of the individuals who interviewed the minor boys in this matter have been trained in forensic interviewing techniques (with the exception of foster mom)" and argued that there was "adequate indicia of trustworthiness."  At oral arguments regarding the motion, petitioner's attorney noted that the court had just heard the foster mother testify regarding a motion for a protective order[3] and could assess her trustworthiness.

The court stated that JV had a developmental disability "based upon the record and file in this matter."  The court also said that it had examined the "specific[] disclosures made by the children" and concluded "that the circumstances surrounding the giving of their statements provide . . . adequate indicia of trustworthiness."  It noted that the statements SZ made to the foster mother had been spontaneous, that the children's statements were consistent, that the children had no motive to fabricate, and that children "of their age [would not] be able to fabricate these stories using [the] language or visible descriptions that they are using."   In a later order, the court allowed some additional statements, noting that they were corroborative and consistent with the other statements.

---

[2] The definition is now located in subsection (27).

[3] The protective-order motion hearing took place on the same date as the motion hearing regarding the request to allow the children's statements into evidence.

During the May motion hearing, DHHS's attorney had said that she did not have the videotapes of interviews that took place at the Children's Advocacy Center (CAC). On November 1, 2023, the court (a successor judge) stated that there had been a "renewed motion on the issue of the tender years exception" and that "everyone seems to agree that" the court needed to review the recordings of the CAC interviews, which consisted of 10 hours of tape. The court heard the parties' renewed oral arguments and listened to the tapes. It later issued a written opinion. The court stated that, after reviewing the recordings and reading the Easter Seals assessment, it concluded that JV had a developmental disability. The court indicated that the statements made by SZ to the foster mother were spontaneous, that the various interviewers were trained in forensic interviewing, that there was consistency among the various statements provided by the children, that the children had no motive to fabricate, and that children "of their age" would not "normally be able to fabricate these facts." The court added:

> The Court finds that there is no prejudice to the parties by the Court reviewing the CAC interviews at this later date and conducting a second tender years hearing, which was outside the presence of the jury and not during the adjudication trial. This [o]rder is largely consistent with the ruling delivered by [the previous judge], and the parties had months to prepare for cross-examination of the witnesses named in this opinion and order.

KS and ZZ contend that the May 2023 pretrial hearing was improper because the court did not take testimony or properly review evidence concerning the trustworthiness of the children's statements. "The reliability of a statement [offered pursuant to MCR 3.992(C)(2)(a)] depends on the totality of the circumstances surrounding the making of the statement." *In re Archer*, 277 Mich App 71, 82; 744 NW2d 1 (2007). "Circumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id*. In this case, the record establishes that the court made its decision with this guidance. KS and ZZ seem to imply that the people to whom the statements were made needed to testify at the tender-years hearing, but the court rule does not require as much. Rather, it merely requires that the court conduct a hearing prior to trial. MCR 3.972(C)(2)(a).

KS and ZZ also argue that the court erred by not viewing the CAC recording. MCL 712A.17b(5) provides:

> A custodian of the videorecorded statement may take a witness's videorecorded statement. The videorecorded statement shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness. The videorecorded statement shall state the date and time that the statement was taken; shall identify the persons present in the room and state whether they were present for the entire video recording or only a portion of the video recording; and shall show a time clock that is running during the taking of the statement.

"MCL 712A.17b(5) requires a trial court to admit videorecordings of a child's forensic interview during a nonadjudicatory stage—here, a tender-years hearing." *In re Brown/Kindle/Muhammad*, 305 Mich App at 632.

The court's failure to admit the CAC recordings at the first tender-years hearing was erroneous. However, the error was harmless because the court subsequently viewed the 10 hours of recordings and ruled anew on the motion to admit the children's statements. See *id.* at 634 (concluding that the failure to admit recorded statements at a tender-years hearing was harmless). "Even if an error occurred, this Court will not disturb the trial court's order unless it would be 'inconsistent with substantial justice' to permit the order to stand." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020), quoting MCR 2.613(A). It is not inconsistent with substantial justice to refrain from reversing the trial court's termination orders on the basis of this issue given that the court did eventually view the recordings.

KS and ZZ contend that there was inadequate evidence that JV had a developmental disability. See MCR 3.972(2). Petitioner, in its initial motion, referred to an Easter Seals assessment contained in a confidential file. The assessment indicated that JV had certain significant diagnoses. The assessment did indicate that the diagnoses were "provisional," meaning that the assessor recommended further observations. However, in the "Background" portion of the assessment, it was set forth that JV had already been diagnosed with these conditions and qualified for Community Mental Health services. Further information in the confidential file amply supported the trial court's conclusion regarding JV's disability.

## B. STATUTORY GROUNDS

KS and ZZ argue that petitioner failed to establish a statutory basis for termination of their parental rights to the three children[4] by clear and convincing evidence. We disagree.

The statutory grounds for termination of parental rights are articulated in MCL 712A.19b(3), which provides in pertinent part:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable

---

[4] KS is the mother of all three children, but ZZ is only SZ's father, despite residing with and abusing all three children.

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

\* \* \*

(*iii*) Battering, torture, or other severe physical abuse.

The evidence of pervasive and severe abuse perpetrated by both KS and ZZ against all three children overwhelmingly established each of these grounds for termination. This case initially came to CPS on the basis of allegations that ZZ taped and chained BS to a chair in his automobile body shop. It came to light that ZZ also put BS in a garbage can in the bed of a pickup truck and then hoisted the truck up on a vehicle lift. Further, ZZ dragged JV across the floor of the body shop, causing scratches on his back. As the case progressed, evidence was uncovered regarding numerous instances of physical abuse by both KS and ZZ. ZZ tasered all three children, shot SZ with a BB gun, and gave JV a black eye by hitting him in the face. There was evidence that KS would slap the children, at one point giving JV a bloody nose. JV had a mark on his mouth at his forensic interview from being slapped by KS. The children also disclosed an incident in which they were forced to take a bath together in ice-cold water. There was also evidence of an ongoing pattern of sexual abuse perpetrated by KS and ZZ against all three children. This abuse included performing sex acts on the children, performing sex acts on each other in the presence of the children, and showing the children nude photographs of ZZ. The record showed the JV acted out sexually and that KS and ZZ were aware of this, but failed to comply with the safety plan. Finally, there was evidence that KS and ZZ forced JV to take the garbage out while naked during the winter time.

In light of this evidence, the trial court did not clearly err by finding that the statutory grounds for termination were established.

## C. BEST INTERESTS

KS and ZZ argue that the trial court erred by finding that termination of parental rights was in the best interests of the children. We disagree.

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re*

*Brown/Kindle/Muhammad*, 305 Mich App at 637 (quotation marks and citation omitted); see also MCL 712A.19b(5).

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

The abuse described earlier all weighs overwhelmingly in favor of the court's finding that termination of parental rights was in the best interests of all three children. The evidence supported a finding that the children were not bonded with KS or ZZ and did not want to see or live with them. Both SZ and JV had expressed that they "hated" KS and ZZ. The children's guardian ad litem (GAL) said that the boys' improvements since coming into foster care were "astounding," and, accordingly, she supported termination. Neither KS nor ZZ took accountability for the severe trauma the boys had endured. The trial court did not clearly err by concluding that it was in the best interests of JV, BS, and SZ to terminate KS's parental rights and that it was in the best interests of SZ to terminate ZZ's parental rights. KS and ZZ contend that the case was built upon unreliable statements by the children. However, we have concluded that the trial court properly admitted the children's statements, and this Court must give "due regard to the trial court's special opportunity to observe the witnesses" who testified about the children's statements. See *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

For these reasons, the trial court did not clearly err by finding that termination of parental rights was in the best interests of all three children.

In conclusion, in docket nos. 370510 and 370513, no errors warranting reversal have been established. Accordingly, we affirm.

IV. DOCKET NO. 370511: JVS

JVS argues that the trial court erred by finding statutory grounds for termination of his parental rights to JV.[5] We disagree.

---

[5] JVS argued in his main appellate brief that the trial court erred by ordering termination at the initial dispositional hearing—which resulted in a lack of reunification services offered to JVS—because the court did not make a finding of aggravated circumstances and there was no such evidence of aggravated circumstances. After petitioner noted in its appellee brief that reunification services are not required when the parent has been ordered to register under the Sex Offenders

Among other grounds,[6] JVS's parental rights were terminated pursuant to MCL 712A.19b(3)(m). This subdivision provides that termination of parental rights is appropriate if:

> The parent is convicted of 1 or more of the following, and the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child:
>
> (*i*) A violation of section 136, 136a, 316, 317, 520b, 520c, 520d, 520e, or 520g of the Michigan penal code, 1931 PA 328, MCL 750.136, 750.136a, 750.316, 750.317, 750.520b, 750.520c, 750.520d, 750.520e, and 750.520g.
>
> (*ii*) A violation of a criminal statute that includes as an element the use of force or the threat of force and that subjects the parent to sentencing under section 10, 11, or 12 of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.10, 769.11, and 769.12.
>
> (*iii*) A federal law or law of another state with provisions substantially similar to a crime or procedure listed or described in subparagraph (*i*) or (*ii*).

JVS concedes that he was convicted of a listed crime but contends that the trial court did not adequately explain why it would be harmful to JV to continue the parent-child relationship. The court appears to have tied its finding of harm to the "horrific" nature of JVS's crimes, including criminal sexual conduct, and this was appropriate. JVS argues that because "best interests" is mentioned in subdivision (m), DHHS needs to prove the "best interests" aspect of the subdivision by clear and convincing evidence, whereas the trial court mentioned "a preponderance of evidence" when discussing best interests. However, subdivision (m) requires a finding "that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child." In other words, the best-interests finding is tied to the finding of harm, and the court specifically stated that continuing the parent-child relationship would be harmful to JV. That termination was in JV's best interests was demonstrated not only by the nature of JVS's crimes but also by the evidence that JV had significant special needs and needed "special care," had vastly improved in foster care, and had no bond with JVS.

Because it is only necessary to establish one statutory ground for termination, we decline to review JVS's arguments regarding the other grounds cited by the trial court. See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Therefore, in docket no. 370511, we affirm.

---

Registration Act (SORA), MCL 28.721 *et seq*., see MCL 712A.19a(2)(d), JVS made the following statement in his reply brief: "Respondent-Father concedes that he is listed on the SORA and, thus, that MCL 712A.19a(2)(d) applies. Therefore, Respondent-Father withdraws that issue from his appeal." JVS has, therefore, abandoned his argument about a lack of reunification services.

[6] Petitioner conceded at oral arguments that the trial court erred with respect to its reliance on 712A.19b(3)(h).

## V. DOCKET NO. 370694: NW

## A. STATUTORY GROUNDS

NW argues that petitioner failed to establish a statutory basis for termination of his parental rights to BS by clear and convincing evidence. We disagree.

Among other grounds, NW's parental rights were terminated pursuant to MCL 712A.19b(3)(c)(*i*). Termination pursuant to subsection (c)(*i*) is appropriate when "the totality of the evidence" supports a finding that the parent "had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Additionally, the court must find that "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). The determination of what constitutes a reasonable time includes both how long the parent will take to improve the conditions and how long the child can wait for the improvements to occur. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

On March 2, 2023, NW made a plea of admission to some of the allegations against him. He admitted that he lacked stability in his life, had left BS without supervision, abused substances, and was facing criminal charges involving a motor-vehicle accident during which BS was present. He admitted that he had not followed numerous safety plans that had been implemented, that BS had been exposed to verbal arguments, that he had been unhoused while BS was in his custody, and that BS had not been attending school regularly. A DHHS worker testified at the termination hearing that NW stopped visiting BS and stopped communicating with DHHS in July 2023.[7] NW had not seen BS since July 28, 2023. He had not completed any services that had been ordered. The worker agreed that DHHS had "ma[d]e beyond reasonable efforts really to contact him and try to get him into those services." In July 2023, NW told DHHS that he wanted to "sign off" his parental rights. The worker stated that NW had not rectified any of the conditions leading to adjudication.

In sum, the record establishes that NW wholly failed to make any progress toward rectifying the conditions leading to adjudication. Therefore, the court did not err by finding that petitioner established MCL 712A.19b(c)(3)(*i*) by clear and convincing evidence, and we do not need to review his arguments regarding subsection (j). See *Ellis*, 294 Mich App at 32.

## B. BEST INTERESTS

NW argues that the trial court erred by finding that termination of parental rights was in the best interests of BS. We disagree.

---

[7] He apparently had one communication afterwards, in September 2023, when he repeated an earlier desire to voluntarily release his parental rights.

At the outset, we note that although NW's appellate counsel argues that the trial court clearly erred by determining that it was in BS's best interest to terminate NW's parental rights, he cites outdated law stating that the court "must order termination of parental rights" unless "termination is not in the child's best interest." In this regard, we note that in 2008 the Legislature amended MCL 712A.19b(5), requiring a trial court to always make an affirmative finding "that termination of parental rights is in the child's best interests." This change was effective on July 11, 2008. See 2008 PA 199.

As discussed earlier, when determining whether termination of parental rights is in the best interests of the child,

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

As noted earlier, NW had virtually no contact with BS during the pendency of the proceedings and at times expressed interest in releasing his parental rights. The DHHS worker testified that the bond between NW and BS had been limited from the start and that by the time of the termination proceedings, no bond between the two remained. While BS needed intensive therapy due to behavioral issues, the worker testified that he was doing well overall. She said that BS's foster home was safe, appropriate, and met all of his needs. The worker described BS as "very happy" with his foster family and remarked that the foster parents had significantly helped him catch up academically. The caseworker and GAL each opined that termination of parental rights was in BS's best interests.

Given this evidence, NW cannot establish a clear error arising from the trial court's finding that termination of parental rights was in the best interests of BS.

In conclusion, because NW's arguments are each without merit, we affirm in Docket No. 370694.

## VI. CONCLUSION

In Docket No. 370510, KS has failed to establish any errors warranting reversal regarding the tender-years hearing, the statutory grounds for termination, or best interests. Therefore, we affirm the trial court's order terminating KS's parental rights to JV, SZ, and BS.

In Docket No. 370513, ZZ raises the same meritless arguments as KS. Therefore, we affirm the trial court's order terminating ZZ's parental rights to SZ.

In Docket No. 370511, JVS has failed to establish any errors warranting reversal regarding the statutory grounds for termination. Therefore, we affirm the trial court's order terminating JVS's parental rights to JV.

-11-

In Docket No. 370694, NW has failed to establish any errors warranting reversal regarding the statutory grounds for termination or best interests. Therefore, we affirm the trial court's order terminating NW's parental rights to BS.

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace